### HOYT et al. v. UNITED STATES.
#### No. H—225.

Court of Claims.
April 7, 1930.

Frank J. Albus, of Washington, D. C., for plaintiffs.

C. R. Pollard, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (Ralph E. Smith, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GRAHAM, GREEN, LITTLETON, and WILLIAMS, Judges.

GRAHAM, Judge.

This case involves primarily a question of the plaintiffs' right to recover interest on a credit and the due date of that credit from which interest should be computed. It being admitted that there was a credit allowed, interest should be computed from the date of payment of the amount credited to the date on which the Commissioner of Internal Revenue approved the schedule of refunds and credits and certified the credit to the disbursing officer. The question is controlled by the case of Swift & Co. v. United States, 67 Ct. Cls. 322, and Boston Buick Co. v. United States (D. C.) 27 F.(2d) 395.

But there is another question involved which requires some comment. Without going into the details of the dates, briefly stated the facts are these: There existed a copartnership composed of Charles Chase Hoyt and Robert Perkins Gay. The copartnership made its tax return for 1917 and the individual members of the copartnership made their returns. The Commissioner of Internal Revenue assessed an underpayment against each of the partners, and thereafter declared an overassessment of $120,000 in favor of the copartnership. Robert Perkins Gay died prior to the filing of the petition in this case, and John Challis and Charles Hoyt qualified as executors of his estate, and are petitioners herein.

Of the intention to declare the said overassessment in favor of the copartnership, the partners were advised before the receipt of the formal notice, and they thereupon applied to the collector to have the underpayments assessed against each of them credited on the overassessment in favor of the copartnership. The underpayments assessed against them aggregated $62,788.95. They were told at the bureau by the deputy collector that the bureau would consent to do this if they would each waive their respective rights as to each other to have these credits made, and they filed waivers, each of them. The effect of the waivers, dated April 3, 1924, was that Hoyt waived all rights to claims for credit presented by the executors of the estate of Gay and the executors of the estate of Gay did the same as to Hoyt. Thereafter, on April 5, 1924, each of the partners filed a claim for credit on their income tax for 1917, in which it was requested that the additional assessment for underpayment of taxes against each of them be applied as a credit to the overassessment determined in favor of the copartnership.

On May 14, 1924, the commissioner approved a schedule of overassessments, among which was an overassessment in favor of the partnership of $120,000 for the calendar year 1917. This schedule was transmitted to the collector for his action in accordance with the directions appearing thereon. On August 11, 1924, the collector in compliance with said directions, returned the schedule properly signed, together with schedule of refunds and credits. Of this sum of $120,000, excess profits taxes due the copartnership, $29,533.59 was applied against the underpayment of taxes assessed against Hoyt, and $33,255.36 applied against the underpayment of taxes assessed against Gay, leaving a net balance of $57,211.05.

On September 2, 1924, the Commissioner of Internal Revenue signed the said schedule of refunds and credits, authorizing the issuance of a treasury check to the copartnership for the last-named sum, and on September 3, 1924, notified the copartnership of the action he had taken and of the refundable balance due of $57,211.05. On September 8, 1924, the collector of internal revenue mailed to the copartnership a check for $58,147.50 covering the net balance refundable and interest thereon amounting to $936.45.

The Farnsworth-Hoyt Company, by its authorized representatives, on October 12, 1926, requested the commissioner to allow additional interest on the overassessment of $120,000 for the year 1917, and on March 11, 1927, the Commissioner of Internal Revenue notified the company that additional interest had been allowed amounting to $20,870.25, which was subsequently paid by treasury check mailed to the copartnership.

The first allowance of interest, $936.45, had been allowed on the underpayment of

excess profits taxes in the amount of $15,886.24 from April 2, 1923, the date of the payment of the said underpayment of excess profits taxes for the year 1917, to March 26, 1924, the date of the assessment of the income tax to which credit was applied. The aforesaid $20,870.25, the second allowance of interest, was the balance after deducting the first allowance, $936.45, from $21,806.70, the interest determined on $57,211.05, the balance of the overassessment, from July 13, 1918, the date of the payment of the excess profits taxes, to September 2, 1924, the date of the signing of the schedule of refunds and credits by the commissioner, authorizing the issuance of a treasury check for the balance due.

The copartnership, Farnsworth-Hoyt Company, Charles Chase Hoyt, and Robert Perkins Gay, the decedent, have paid no interest on the underpayment of excess profits taxes and income taxes previously referred to.

Under the statutes no interest could be collected by the government other than by suit or upon failure to pay prior to the act of 1921 on additional assessments against taxpayers, and the situation existed where under certain conditions the taxpayer could collect interest on refunds and credits but the government could not, and this condition continued until the passage of the act of 1926, when, although the assessments made under that act were for taxes involved in the years prior to the act of 1921, interest in the case of a credit is payable only to the due date of the tax discharged by credit.

The instant case involves taxes for 1917, and the government could collect no interest on additional assessments for underpayments against the copartners, and so if the credit of the underpayments of the copartners to the overassessment allowed the copartnership was not properly made, the partnership would be entitled to interest on the $120,000, the whole amount of the overassessment, to the date of certification of the amount as an overpayment to the disbursing clerk; that is, September 2, 1924, under the ruling in the Swift and other cases cited above.

The question here is: Are they entitled to this interest? If they had not asked for this credit the partnership would have been entitled to interest on $120,000 from the date of payment, July 13, 1918, to the date of certification of the amount to the disbursing clerk, and as liquidating partners they would have received it. Is the mere fact that they asked for this credit sufficient to deprive them of what they are entitled to under the law? It does not appear that the request for the credit said anything about interest, and it appears that the object in asking for the credit was to get their indebtedness to the government on their respective additional assessments paid at that time. As there is nothing to show that this request was intended to be a waiver of the interest, we are of the opinion that they are entitled to the whole interest.

In this view of the matter it is not necessary for the court to pass upon the question raised in the case, whether the commissioner legally could enter as credits against the individual indebtedness of the partners a refund to the partnership. The action of the commissioner in this case was a short method of disposing of the matter, and what was done was done for the convenience of the plaintiffs. But this mere fact is not sufficient to deprive them of their legal rights as to the interest. The plaintiffs are entitled to recover $23,116.80, interest on $62,788.95, the amount of its overpayment by the partnership used to satisfy the underpayments charged against plaintiffs, from July 13, 1918, to the date of the signing of the schedule of refunds, September 2, 1924. It is so ordered.