**FORD MOTOR CO. v. UNITED STATES.**
No. M–2.

Court of Claims.
Jan. 14, 1935.

594

Valentine B. Havens, of Washington, D. C. (Olcott, Paul & Havens, Randolph E. Paul, and Charles B. McInniss, all of Washington, D. C., on the brief), for plaintiff.

John W. Hussey, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The various corporations referred to in the findings, other than Ford Motor Company (Michigan), Ford Motor Company (Delaware), and Henry Ford & Son, Inc. (Michigan), may be disregarded in the consideration of the case, as the facts in relation to them have no material bearing on the issue presented. The three companies mentioned are the only ones against which taxes were assessed for the year 1919.

The Ford Motor Company (Michigan) was organized under the laws of Michigan on June 16, 1903, and continued to exist as such corporation until May 1, 1920, on which date, having sold and disposed of all its assets, it filed a certificate of "Notice of Change of Attitude" with the state of Michigan, and ceased to exist as an active corporation. The Ford Motor Company (Delaware) was organized under the laws of the state of Delaware on July 9, 1919. During the year 1919 it acquired all the authorized and outstanding capital stock of the Ford Motor Company (Michigan), as follows: July 14, 1919, 6,100 shares from minority stockholders; July 16, 1919, 11,700 shares from Henry Ford & Son, Inc. (New York); and on September 2, 1919, 2,200 shares from other minority stockholders. The Ford Motor Company (Delaware) also acquired all the capital stock of Henry Ford & Son, Inc. (Michigan), during the year 1919. On May 1, 1920, the Ford Motor Company (Delaware) surrendered such stock and took over all the assets and assumed all the liabilities of the two companies. It thereafter became the operating company, and as such carried on the business and operations previously conducted by Ford Motor Company (Michigan) and Henry Ford & Son, Inc. (Michigan).

An extension of time was granted to the Ford Motor Company (Michigan), Henry Ford & Son, Inc. (Michigan), Ford Motor Company (Delaware), and other affiliated companies in which to file income tax returns for the year 1919. On April 15, 1920, a tentative return headed "Ford Motor Company (Consolidated Return)" was filed with the collector for the year 1919 showing an estimated tax liability of $40,000,000, of which amount a first installment of $10,000,-000 was paid by check of Ford Motor Company (Michigan). On the same date the collector prepared tentative returns for the Ford Motor Company (Michigan) and Henry Ford & Son, Inc. (Michigan), showing an estimated tax liability for the year of $19,740,018.24 for the former company, and an estimated tax liability of $600,000 for the latter company. The taxes estimated to be due on the tentative returns were not assessed against the respective companies. The collector, however, allocated the first installment of $10,000,000 to the respective companies as the first payment on the tentative returns on the basis of $4,893,793.95 to Ford Motor Company (Delaware), $4,935,-004.56 to Ford Motor Company (Michigan), and $171,201.49 to Henry Ford & Son, Inc. (Michigan). The second installment of $10,000,000 paid on June 15, 1920, was likewise allocated to the tentative returns of the respective companies on the same basis.

On July 15, 1920, the Ford Motor Company (Michigan) filed its completed income and profits tax return for the six-month period January 1, 1919, to June 30, 1919, showing a tax liability of $22,363,130.06, which amount was duly assessed against that company. On the same date, July 15, 1920, the Ford Motor Company (Delaware) filed a consolidated income and profits tax return for itself and affiliated companies for the period July 1, 1919, to December 31, 1919, showing a tax liability of $22,176,382.82, which amount was duly assessed against that company. Also on the same date Henry Ford & Son, Inc. (Michigan), filed a consolidated income and profits tax return for itself and affiliated companies, for the period January 1, 1919, to June 30, 1919, which

return showed a tax liability of $775,805. This amount was duly assessed against Henry Ford & Son, Inc. (Michigan).

Except the sum of $10,000,000 which was paid by check of the Ford Motor Company (Michigan) as the first installment of the estimated taxes due on the "Ford Motor Company (Consolidated Return)" of April 15, 1920, all the taxes shown to be due and assessed on the completed returns of Ford Motor Company (Michigan), Ford Motor Company (Delaware), and Henry Ford & Son, Inc. (Michigan) were paid on behalf of the respective companies by checks of the Ford Motor Company (Delaware).

Upon a final audit of the books of the several companies involved, the Commissioner determined the tax liability of the respective companies on the basis of two affiliated groups and two nonaffiliated companies, as set forth in finding 21. The determination was communicated to the Ford Motor Company (Delaware) in a thirty-day letter dated July 31, 1924, in which an additional tax of $9,023,708.67 against the Ford Motor Company (Michigan) was shown for the period January 1, 1919, to September 1, 1919, and an overassessment was shown in favor of the Ford Motor Company (Delaware) of $7,767,333.84, for the period July 1, 1919, to December 31, 1919. Following the sending of the usual sixty-day letter, the making of the additional assessment of $9,023,708.67 against Ford Motor Company (Michigan) for the period January 1, 1919, to September 1, 1919, the signing of the schedule of overassessments by the Commissioner showing an overassessment of $7,787,686.26 in favor of the Ford Motor Company (Delaware) for the period July 1, 1919, to December 31, 1919, and other administrative proceedings in the offices of the Commissioner and the collector, usual in such cases, the collector, with the consent of both companies, credited the entire amount of the overpayment (the foregoing overassessment having been found to be an overpayment) of Ford Motor Company (Delaware) against the additional taxes of the Ford Motor Company (Michigan), and issued his notice and demand for the payment of the difference, $1,236,022.41, which amount was paid by check of the Delaware company.

Immediately following this adjustment, Ford Motor Company (Delaware) made claim for interest on the amount of the overpayment in its favor, $7,787,686.26, which was credited on the deficiency assessment of $9,023,708.67 against Ford Motor Company (Michigan). The Commissioner disallowed the claim for interest; hence this suit. No jurisdictional question is involved; the sole issue being the plaintiff's right to the interest claimed, as upon a refund or credit of the overpayment.

The case turns on whether Ford Motor Company (Michigan) and Ford Motor Company (Delaware) are to be regarded as distinct corporations and distinct and separate taxable entities, or whether their separate corporate entities are to be disregarded and the case treated as that of a single taxpayer for the year 1919.

The statutory provisions applicable to the filing of consolidated tax returns and the assessment of taxes thereon for the year 1919 are found in the Revenue Act of 1918:

"Sec. 240. (a) * * * In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. * * *

"(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests." 40 Stat. 1057, 1081.

The provisions of the statute applicable to deficiency assessments appear in the Revenue Act of 1924:

"Sec. 274. (a) If, in the case of any taxpayer, the Commissioner of Internal Revenue determines that there is a deficiency in respect of the tax imposed by this title [chapter], the taxpayer, except as provided in subdivision (d) [section 1051 of this title], shall be notified of such deficiency by registered mail, but such deficiency shall be assessed only as hereinafter provided. Within sixty days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals established by section 900 [section 1211]." 26 USCA § 1048 note.

"(c) If the taxpayer does not file an appeal with the Board within the time prescribed in subdivision (a) of this section [section 1048 of this title], the deficiency of

which the taxpayer has been notified shall be assessed, and shall be paid upon notice and demand from the collector." 26 USCA § 1050 note.

The statutory provisions authorizing the credit or refund of overpayments also appear in the Revenue Act of 1924:

"Sec. 281. (a) Where there has been an overpayment of any income, war-profits, or excess-profits tax imposed by the Act [this chapter], * * * the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer." 26 USCA § 1065 note.

The applicable statutory provision for the allowance and payment of interest on the credit or refund of overpayments is also found in the Revenue Act of 1924:

"Sec. 1019. Upon the allowance of a credit or refund of any internal revenue tax erroneously or illegally assessed or collected, or of any penalty collected without authority, or of any sum which was excessive or in any manner wrongfully collected, interest shall be allowed and paid on the amount of such credit or refund at the rate of 6 per centum per annum from the date such tax, penalty, or sum was paid to the date of the allowance of the refund, or in case of a credit, to the due date of the amount against which the credit is taken, but if the amount against which the credit is taken is an additional assessment, then to the date of the assessment of that amount. The term 'additional assessment' as used in this section means a further assessment for a tax of the same character previously paid in part." 26 USCA § 153 note.

The Ford Motor Company (Michigan) and the Ford Motor Company (Delaware) are separate and distinct corporations, and were treated by the Commissioner as separate and distinct taxable entities, with separate taxable periods during the year 1919, at every stage of the proceedings set forth in the findings until the Ford Motor Company (Delaware) made claim for interest on its overpayment which was applied to the part payment of the deficiency assessed against Ford Motor Company (Michigan). In fact, his determination of an underassessment in the case of the Ford Motor Company (Michigan) and an overassessment in case of Ford Motor Company (Delaware) was based almost entirely upon his decision that the two companies were not affiliated corporations within the meaning of section 240 (b) of the Revenue Act of 1918 during certain periods of the year covered in the consolidated return of Ford Motor Company (Delaware)— a clear recognition of the fact that the two corporations were separate taxable entities, with separate taxable periods during 1919. The deficiency assessment against Ford Motor Company (Michigan) was made in strict accordance with the provisions of section 274 of the Revenue Act of 1924. Every procedural requirement of the statute for making a valid deficiency assessment was strictly complied with. Likewise the Commissioner's determination of the overassessment in favor of Ford Motor Company (Delaware), including the transmission of the schedule of overassessments to the collector showing such overassessment, was made in strict accordance with the statute and the practices then prevailing in the Bureau of Internal Revenue. No contention is made that the Commissioner did not correctly determine the affiliated status of the corporations involved, or that his final determination of their tax liability on the basis of such affiliated status was incorrect. When, however, it came to the question of the allowance and payment of interest on the overpayment in favor of Ford Motor Company (Delaware), the Commissioner ignored entirely the separate corporate entities of Ford Motor Company (Michigan) and Ford Motor Company (Delaware) and treated them as a single taxpayer for the entire period of the calendar year. He held that the application of the $7,787,686.26 overpayment by Ford Motor Company (Delaware) against the deficiency assessment of $9,023,708.67 against Ford Motor Company (Michigan) was a mere bookkeeping transaction shifting the tax liability from one unit of the taxpayer's organization to another, and that, instead of an overpayment, there was a large amount of tax outstanding, in excess of the amount apparently overassessed, which was due before the credit was made, and upon which the government could not collect interest.

We have carefully considered the decisions of the Supreme Court cited by the defendant in support of the contention that the separate corporate entities of the corporations involved should be disregarded and the case treated as that of a single taxpayer. The facts in each of the cases relied upon are, we think, clearly distinguished from the facts in the instant case.

In Southern Pacific Company v. Lowe, Collector, 247 U. S. 330, 38 S. Ct. 540, 62 L.

Ed. 1142, it was held that, where the shares of a corporation were all owned, and its property and funds possessed, and its operations and affairs completely dominated, by another corporation, so that the two were in substance but one, and where dividends from one to the other were consummated, after the Revenue Act of 1913 (38 Stat. 114) became effective, by a mere paper transaction —formal vote of the directors of the first company and entries on the books of the two —and represented merely what the second company was entitled to have as a shareholder before January 1, 1913, from a surplus theretofore accumulated, such dividends were not taxable as income of the shareholding company within the true intent and meaning of the Income Tax Act of 1913.

In Gulf Oil Corporation v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133, it was held that dividends of earnings by subsidiaries to a company holding all their stock and controlling them in conducting a single enterprise, the result of the transfers being merely that the main company became the holder of debts in the business, previously due from one subsidiary to another, were not taxable as income under the Income Tax Act of 1913, where the earnings were accumulated before the taxing year and had practically become capital. The court in its opinion stated that the principle of the Southern Pacific Co. v. Lowe, supra, must be taken to cover this case.

In United States v. Lehigh Valley Railroad Company, 220 U. S. 257, 31 S. Ct. 387, 55 L. Ed. 458, the court held that, while previous decisions of the court had announced the rule that under the commodities clause of the Hepburn Act of June 29, 1906 (49 USCA § 1 (8), stock ownership by a railroad company in a bona fide corporation, irrespective of the extent of such ownership, did not preclude such railroad company from transporting the commodities manufactured, produced, or owned by such corporation, it is still open to the government to question the right of such railroad company to transport commodities of a corporation in which the company owns stock and uses its power as a stockholder to obliterate all distinctions between the two corporations.

In Chicago, Milwaukee & St. Paul Railway Co. et al. v. Minneapolis Civic & Commerce Association, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229, two railroad companies between them owned all the stock, and controlled completely the property and operations, of a third railroad company. By virtue of a contract between the third company and the two owning companies, the third company surrendered substantially all freedom of corporate action on its part to the two owning companies, which converted it largely into a mere agency or instrumentality for doing their business. The third company owned and operated one mile of main track and one and one-half miles of yard track and sidings in the city of Minneapolis. Assuming to be an independent railroad company, the third company filed tariffs with the Interstate Commerce Commission and the Minnesota commission, pursuant to which it charged and collected, in addition to the line-haul rate from point of origin, an extra charge for inbound and outbound loaded cars. The two owning companies separately owned and operated many tracks in Minneapolis on which mills and other industries were located, to which industries they each rendered substantially the same switching and delivery services, without extra charges over the line rate, as were rendered by the third company to industries located on its tracks, for which it made extra charges. The third company issued no bills of lading and made no collection from shippers, but charged its switching rates against the owning companies, which in turn added the additional charges on inbound traffic to the line-haul rate. Upon these facts the Supreme Court, upholding the Minnesota Supreme Court, held that the fact that the third company had the legal title to the terminal and spur delivery tracks should not be permitted to become the warrant for permitting a charge upon shippers greater than they would be required to pay if the title were in the owning companies.

The essence of the decisions in the cases referred to is that, where stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose of controlling the corporation and dominating its management and affairs so that it may be used as a mere agency, tool, or instrumentality of the owning corporation or corporations, the courts will disregard the fiction of the separate corporate entity and deal with the substance of the transactions in such manner as the justice of the case may require. The same principle is announced in Linn & Lane Timber Co. v. United States, 236 U. S. 574, 35 S. Ct. 440, 59 L. Ed. 725, and in United States v. Delaware, Lackawanna & Western Railroad Co., 238 U. S. 516, 35 S. Ct. 873, 59 L. Ed.

1438. This rule is not applicable to the facts of the instant case in respect to either Ford Motor Company (Delaware) or Ford Motor Company (Michigan). It is inapplicable to the Ford Motor Company (Delaware) because it is the parent or owning company. In each of the cases cited, the company, whose separate corporate entity was disregarded by the court, was a subsidiary corporation, the entire property and assets of which were owned by one or more other corporations which completely dominated its affairs and exercised control over the management of its business to such an extent that the companies were in substance but one corporation. It is inapplicable to Ford Motor Company (Michigan), because that company, during the period involved, was the owner, and had the exclusive possession of all the assets and property belonging to the company and exercised complete and unrestricted control over its own business and affairs. Although Ford Motor Company (Delaware) owned all the capital stock of Ford Motor Company (Michigan), it neither owned nor had possession of any of the property or assets of that company, and exercised no control whatever in the management of its business or affairs. It is clear, therefore, that the decisions referred to do not support the contention that the court should disregard the separate entities of the corporations involved and treat them as a single taxpayer for the year 1919.

The Commissioner of Internal Revenue acted in accordance with the statute and regulations of the Treasury Department in treating Ford Motor Company (Michigan) and Ford Motor Company (Delaware) as separate taxable entities in his determination of their tax liabilities for different taxable periods during the year 1919. It necessarily follows that they must be regarded and treated on the same basis in all transactions having to do with the adjustment and settlement of such tax liability. If they are separate taxpayers in the assessment and payment of the tax, they cannot be considered and treated as constituting a single taxpayer in respect to overassessments and deficiencies. Therefore the application of the overpayment in favor of Ford Motor Company (Delaware) to the payment in part of the deficiency assessment against Ford Motor Company (Michigan) was something more than mere bookkeeping transactions adjusting the tax liability of a single taxpayer. It was a procedure by which taxes due from one taxpayer for a certain taxable period were paid in part by the use of an overpayment made by another taxpayer for a different taxable period.

In further support of the contention that the separate corporate entities of the corporations involved should be disregarded, it is urged that Ford Motor Company (Michigan) was the only company which realized taxable income in 1919, and that the tax involved was the tax of that company, regardless of whom it was assessed against or who paid it. This contention ignores the provisions of the statute dealing with the filing of consolidated tax returns and the assessment of taxes thereon. The fact that the Ford Motor Company (Michigan) may have earned the greater part of or all the consolidated income on which the taxes of the affiliated group were computed is immaterial, in view of the fact that the statute permits members of an affiliated group to arrange the assessment of the tax shown to be due on the consolidated return on any basis they may agree upon, without regard to the source of the income. The income of the respective members of the affiliated group is considered in making the assessment only in case there is no agreement among them as to the apportionment of the tax. When the members of the affiliated group agree among themselves as to the apportionment of the tax, the assessment of the tax in accordance with the agreement is mandatory under the statute, and, when the assessment of the entire tax, as in this case, is made against a single member of the group, the corporation against which the assessment is made becomes the taxpayer within the meaning of the statute, and is alone entitled to refund or credit of any overpayment of the tax. This is so well settled that citation of authorities in support of the proposition is unnecessary.

It is also contended that, if Ford Motor Company (Michigan) and Ford Motor Company (Delaware) are to be considered as distinct corporations in connection with the taxes in question, there was no agreement between the Ford Motor Company (Delaware) and its affiliated companies as to the apportionment of the taxes shown to be due on the consolidated return, and that the Commissioner should have made the assessment against the respective companies on the basis of the net income properly assignable to each, in which case no part of the tax would have been assessed against Ford

Motor Company (Delaware); it having sustained a net loss during the taxable period.

■ The record is silent as to whether there was, or was not, an express agreement between the companies as to the apportionment of the tax among them. In this situation it must be assumed that the action of the Commissioner in assessing the entire tax against the Ford Motor Company (Delaware) was correct and in accordance with the statute. Morganite Brush Co., Inc., v. Commissioner, 24 B. T. A. 776. It is well settled that the agreement referred to need not be in writing, nor in any particular form or language. It may be implied as well as expressed, and may be inferred from the acts of the parties and the facts and circumstances of the case. In re Temtor Corn & Fruit Products Co. (D. C.) 299 F. 326; Popular Price Tailoring Company v. Commissioner (Seventh C. C. A.) 33 F.(2d) 464; Woodside Cotton Mills Company v. Commissioner, 13 B. T. A. 266. The facts and circumstances of the case, including the filing of the various tentative returns, the filing of the completed consolidated return, the assessment of the entire tax shown to be due thereon against the plaintiff company, and the subsequent payment by that company of the third and fourth installments of the tax, without complaint or suggestion that the tax had been wrongfully assessed against it, justifies the inference that there was an agreement between the affiliated companies that the entire tax should be assessed against the Ford Motor Company (Delaware). Certainly the facts and circumstances do not justify a finding that there was no such agreement, and, in the absence of such a finding, the presumptive correctness of the assessment as made must stand. The contention that there was no agreement as to the assessment of the tax is made for the first time on the trial of the case in this court. It was at no time made by the Commissioner of Internal Revenue in the consideration and disallowance of the plaintiff's claim for interest on the overpayment.

■ The fact that the government could not collect interest on the deficiency assessment against Ford Motor Company (Michigan) does not affect the right of the plaintiff company to interest on the credit or refund of the overpayment in its favor. The 1924 Revenue Act, in effect at the time the adjustment was made, provided for the allowance and payment of interest on the credit or refund of an overpayment, but did not provide for the collection of interest by the United States on a deficiency assessment. Under these provisions the crediting of an overpayment of income, war profits, or excess profits taxes against similar taxes assessed under any of the revenue acts prior to the passage of the 1921 Revenue Act (42 Stat. 227) resulted in the payment of interest on the overpayment, while the government could not collect interest on the deficiency, even though the deficiency may have been due prior to the date of payment of the taxes made the subject of the overpayment. Recognizing that this situation was inequitable from the standpoint of the government, Congress corrected it in the Revenue Act of 1926 with a provision authorizing the collection of interest on deficiency assessments made thereafter, from the date of the passage of the act to the date of the deficiency assessment, in respect to taxes imposed by any act of Congress prior to November 23, 1921. The plaintiff's right to interest on the overpayment in its favor must be determined under the statutory provisions in force at the time the overpayment was applied on the deficiency assessment against Ford Motor Company (Michigan). Manifestly its plain right to interest under the statute cannot be defeated because of the inability of the government to collect interest on the deficiency.

Section 281 (a) of the Revenue Act of 1924 (26 USCA § 1065 note) provides that the amount of any overpayment of income, war profits, or excess profits tax shall (1) be credited against any income, war profits, or excess profits tax or installment thereof then due from the taxpayer, and (2) that any balance of such excess be refunded immediately to the taxpayer. This section clearly contemplates that the credit authorized be made against taxes due the government from the same taxpayer making the overpayment, and does not contemplate or authorize the crediting of an overpayment in favor of one taxpayer against taxes due to the government from another taxpayer. David Daube v. United States, 59 F.(2d) 842, 1 F.Supp. 771, 75 Ct. Cl. 633. At the time the overpayment of $7,787,686.26 in favor of Ford Motor Company (Delaware) was applied to the deficiency assessment of $9,023,708.67 against Ford Motor Company (Michigan), no taxes or any installment thereof was then due from Ford Motor Company (Delaware) to the United States. In this situation no legal credit of the overpayment could be made, and the entire amount was refundable to the plaintiff company as an overpayment, on which it

was entitled to interest from the date of the payment of the tax to the date of the allowance of the refund. The consent of Ford Motor Company (Delaware) that the overpayment be applied to the part payment of the deficiency assessment against the Michigan company, and the application could not have been so made without its consent, Hart Glass Manufacturing Co. v. United States, 48 F.(2d) 435, 73 Ct. Cl. 32, did not deprive it of interest on the overpayment which it was otherwise entitled to under the statute. What was done was for the mutual benefit of the government and the plaintiff company, and was a short-cut method of adjusting the tax accounts of the two companies. Hoyt et al. v. United States, 39 F. (2d) 739, 69 Ct. Cl. 604. This obviated resort to the more roundabout method of the government making a formal and technical refund of the overpayment to Ford Motor Company (Delaware) and that company in turn returning to the government the same amount in payment of the deficiency assessment against Ford Motor Company (Michigan). This was precisely the result attained by the short method used, and, while the transaction was characterized as a credit on the records of both the collector and the Commissioner, it was not such within the meaning of the statute, but was in substance a refund of the overpayment, as much so as if the usual procedure had been followed and a refund check had been issued for the amount.

■ It is further contended that neither a refund nor credit was ever allowed in this case, as no reference to the overpayment appeared in the schedule of refunds and credits when approved by the Commissioner. This failure was due entirely to the erroneous notation of the collector on the schedule of overassessments that the amount of the overassessment in favor of Ford Motor Company (Delaware) had been abated, when it had in fact been credited against the deficiency assessment of Ford Motor Company (Michigan). The error of the collector was discovered a few days after the Commissioner had approved the schedule of refunds and credits, and immediately thereafter the records of both the Commissioner and the collector were corrected to show that the overpayment had been credited and not abated, as shown by the collector's erroneous notation on the schedule of overassessments. The action of the Commissioner in correcting his own records to conform to the facts, and in directing the collector to do likewise, carried with it his approval of the action of the collector in applying the overpayment in favor of Ford Motor Company (Delaware) to the part payment of the deficiency assessment against Ford Motor Company (Michigan), and constituted, under the facts of the case, the allowance of a refund as of the date on which he approved the schedule of refunds and credits.

Our conclusion is that the plaintiff is entitled to recover interest on $7,787,686.26, the amount of the overpayment, as upon a refund, from the date of the payment of the tax, to May 29, 1925, the date on which the Commissioner approved the schedule of refunds and credits. The entry of judgment will await the filing of a stipulation by the parties showing the amount the plaintiff is entitled to recover in accordance with the holding of the court.

BOOTH, Chief Justice, concurs.

LITTLETON, Judge (concurring).

In addition to what has been said in the foregoing opinion, a few words might be said with reference to the substance of the transactions giving rise to the question presented. In the decision of the question here involved, and in applying the provisions of the statute thereto, we are confronted with the same matter of substance with which the defendant was confronted when it separated the Michigan and Delaware corporations by denying their claim that their net taxable income and invested capital and that of certain other corporations should be computed as the income and invested capital of a single business unit, and that the tax should be computed thereon accordingly. Had the corporations been treated as a single business unit and their identities disregarded, many of the adjustments made by the Commissioner would not have been necessary, and apparently a determination of the greater part of the additional assessment and the overpayment would not have been required. There was a valid agreement among the corporations as to who should pay the tax shown upon the return, which agreement was authorized by the statute and pursuant to which the plaintiff was the taxpayer, under the statute, in respect of the taxes paid by it. It was therefore in connection with the recognition of the separate identities of the corporations and the appropriate adjustment of invested capital, net income, and tax liability—that is, a clear recognition of both form and substance—that a further tax

of more than $1,200,000 was determined and collected by the defendant.

In matters of this kind, for the purpose of taxation, the separate identity of corporations and their stockholders is important. Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079. No one except plaintiff, a Delaware corporation, had any right to demand from the government the return of the excess payment of $7,787,686.-26 made by it, and the government did not and could not have recognized as valid any claim therefor by any other corporation or individual. This corporation was put upon notice that it was required to file a claim for refund therefor, and, if this had not been done and the statute of limitation had run against the refund to the Delaware corporation of that overpayment, it would have been lost to the Delaware corporation, while the statute and the substance of the transaction would have required the defendant to proceed to collect from the Michigan corporation the additional assessment against it of $9,023,708.67, which the defendant would have done. Without exception, the decided cases hold, and the practice of the Treasury Department is to the effect, that interest provided by the statute is payable on an overpayment by one taxpayer offset against a tax assessed against another taxpayer for the same or different years. This rule is applicable here.

### GREEN, Judge (concurring).

If the Commissioner had not refused to accept a consolidated return for part of the taxable year in controversy and had then held in accordance with the contentions made on behalf of the defendant at this time that the Delaware and Michigan companies were one for taxation purposes, there would have been no deficiency in the tax payments. But, under the ruling that he made with reference to the period of the affiliated status of the companies involved, a deficiency was assessed against one company which exceeded in a very large sum the overpayment found to be made by the other. His ruling in computing the tax is conceded to be correct, and, if it was correct when the amount of taxes was fixed, it was also correct and must be applied when the amount of interest is to be determined. I do not think the government can assign a certain status to a taxpayer for the purpose of collecting taxes and then give it another status in refusing to allow interest. For these reasons I concur in both of the foregoing opinions.

### WHALEY, Judge (dissenting).

I find myself in disagreement with the opinion of the majority of the court.

The facts as found by the court show that there never was at any time any actual overpayment of taxes by these Ford corporations, either separately or collectively. It is admitted that only the correct taxes had been paid and that not one dollar of the taxpayer's money over the amount of the correct taxes was used or enjoyed by the government for any period of time. Having this outstanding fact in mind, the conclusion awarding a judgment is impossible to my way of thinking. All of these corporations were owned and controlled in whole by Henry Ford and his son in July, 1919, with the exception of the Michigan corporation. They owned the controlling stock interest in this corporation and had an option of purchase for the scattered minority stock and holdings of Couzens and Hauss. All these corporations were treated as a unit, having the same officers, the same attorneys, and the same offices. The Michigan corporation made payment of the first installment of the entire taxes of all the corporations. All other payments of taxes were made by the Delaware corporation. The Delaware corporation filed a return of income for the group claiming affiliation as of July 1, 1919, but the Commissioner ruled out of the affiliated group the Michigan corporation from July 1, 1919, to September 2, 1919, on the ground that the Delaware corporation did not possess or own sufficient stock in the Michigan corporation as of July 1, 1919, to permit affiliation. From July to September the Delaware corporation acquired the stock of Couzens and Hauss and other minority holdings, and the Commissioner allowed affiliation as of the date of September 2, 1919. As the taxes of the several corporations had been paid on the basis of affiliation from July 1, 1919, whereas affiliation of the Michigan corporation was allowed as of September, 1919, the Commissioner separated the taxes due by the Michigan corporation and the Delaware corporation up to that date. The result of this statement showed the Michigan corporation as having underpaid its taxes in an amount over nine millions of dollars and the Delaware corporation as having overpaid its taxes by something over seven millions of dollars. The same officers and attorneys representing these corporations requested of the Commissioner and were permitted by him to apply the credit of the Delaware corporation to the deficien-

cy of the Michigan corporation, and, after this was done. the balance due the government of over a million dollars was paid by the check of the Ford Motor Company. Although there is nothing in the record to show whether this was the check of either of these corporations, it is a fair assumption that it was the check of the Ford Motor Company of Delaware, for the Michigan corporation had passed out of existence at that time, and only the Delaware company was alive and functioning.

This suit is not one to recover an overpayment of taxes but to recover interest on the bookkeeping or formal credit made by the Commissioner. Doubtless, following the form of these transactions and applying the strict letter of the law, the majority opinion is correct; but, when the substance of these transactions is taken into consideration and the spirit of the law applied, the plaintiff is not entitled to recover $1 from the government. While these two corporations were separate legal entities, yet in fact and for all practical purposes (taxation purposes) they were the same. The Delaware corporation owned a majority of the stock of the Michigan corporation, and the latter, acting as its agent, was subject in all things to its proper direction and control. Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142.

In 1920, when this transaction was consummated, all the stock of the Michigan corporation was owned by the Delaware corporation and all the companies had been merged into the Delaware corporation, and Henry Ford and his son were the sole owners of this corporation.

The taxes were never actually overpaid; as a matter of fact, less than the correct amount of taxes had been collected. The government has never had the use of a dollar of actual overpaid taxes. The theory of allowing interest on overpayments is that the government has had the use of the taxpayer's money and should pay for its enjoyment what it is supposed the taxpayer could have made if he had had the use of that money. It was never contemplated or intended that interest should be allowed on an artificial or bookkeeping credit, totally lacking any use or enjoyment of the funds. I can find no equity or justice in construing the facts and applying the letter of the law so that Henry Ford and his son, through entire ownership of the stock of this corporation, should receive from the Treasury of the United States the enormous sum of over $2,000,000 as interest on a technical or bookkeeping credit when, as a matter of fact, the government has only collected the actual taxes due and has not at any period of time had possession or enjoyed the use of $1 of the Fords' money which was an actual live credit or overpayment.

I am of the opinion that the court should hold that the so-called "credit" was formal in character, a bookkeeping credit, and on such a credit the interest statute was inapplicable where no actual overpayment resulted.

In my opinion, the plaintiff should not recover.