## PHILADELPHIA RAPID TRANSIT CO. v. UNITED STATES.

### No. 41905.

Court of Claims.
April 8, 1935.

Hugh Satterlee, of Washington, D. C. (Weill, Satterlee, Spence & Blakely, of Washington, D. C., and Ballard, Spahr, Andrews & Ingersoll, of Philadelphia, Pa., on the brief), for plaintiff.

John T. Koehler and John A. Rees, both of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The Commissioner of Internal Revenue, upon a final audit and adjustment of plaintiff's income and excess profits tax returns for the years 1919 and 1920, determined overassessments in favor of the plaintiff of $90,636.41 for 1919, and $734,010.65 for the year 1920. The amount of the overassessments, which were overpayments for the years involved, was applied by the Commissioner as statutory credits against deficiency assessments for the years 1919, 1920, and 1921, due from other corporations designated in the findings as the "Lessor Corporations."

The Lessor Corporations referred to are corporations whose properties were, during the years 1919, 1920, and 1921, as well as prior and subsequent thereto, leased by them severally as lessor, to the plaintiff as lessee. These properties were operated by the plaintiff as a part of its street railway system in Philadelphia. The terms of the written agreements under which they were leased to plaintiff provided, among other things, that the plaintiff should pay all taxes, charges, licenses, and assessments against the Lessors for which they would in any wise be liable or chargeable on account of their corporate existence, so that the lessors should be able to declare and pay dividends to their shareholders, free from tax of any and every kind. The separate and distinct corporate existence of the several Lessor Corporations remained intact and continued during the period involved, and each of such corporations had, and exercised complete control over its own corporate business and affairs during such time.

The Commissioner, in treating the application of plaintiff's overpayments for the years 1919 and 1920 as statutory credits against deficiencies due from the Lessor Corporations for the years 1919, 1920, and 1921, computed and allowed interest on the overpayments only from the dates of the payment of the tax to the due dates of the deficiencies against which they were applied. The plaintiff, at the time its overpayments were applied by the Commissioner as credits against the deficiencies of the Lessor Corporations, and at all times prior thereto, challenged the authority of the Commissioner to use the overpayments in such manner as to deprive it of the full amount of interest it was entitled to receive on the overpayments as provided by law in the case of refunds.

Immediately after the receipt of notices and demands by the Lessor Corporations of the deficiencies assessed against them for the years 1919, 1920, and 1921, attorneys for the plaintiff held a conference in Washington with the Assistant Secretary of the Treasury, who was charged, among other duties, with the supervision of the Internal Revenue Bureau. At this conference plaintiff's attorneys represented that it was under contractual obligation to pay the taxes of the Lessor Corporations and stated that it would be impractical, if not impossible, for plaintiff to raise the funds to meet the deficiency assessments until it received the refunds which were then in the process of adjustment on account of its own returns for the same years. The attorneys stated that they desired to have collection of the deficiencies from the Lessor Corporations withheld until plaintiff obtained payment of its refunds. It was then suggested by the Assistant Secretary, and agreed to by plaintiff's counsel, that interest be computed on the overpayments and also on the deficiencies separate and distinct from each other, and that the overpayments, including interest, when finally allowed, be offset in so far as sufficient and necessary against deficiencies, including interest, when collected, and that the collection of the deficiencies be withheld until the overpayments were allowed. The collection of the deficiencies was withheld until after the allowance of plaintiff's claims for refund, but the agreement was not otherwise carried out. The Commissioner in his letter to the

collector transmitting the schedules of over-assessments in plaintiff's favor stated: "The Unit proposes to apply the overpayments made by the Lessee as credits to the taxes due from the Lessors, and to allow interest as provided by law in the case of credits." This, as we have seen, was done.

It is not contended that the agreement between the Assistant Secretary of the Treasury and plaintiff's counsel is binding on the government and plaintiff's suit is in no way based upon it, but upon the statute. The importance of the agreement lies in the fact that the plaintiff, in the petition, and in its brief, waives a portion of the inter-, est it would be entitled to receive as upon a refund of the overpayments and asks for judgment only to the extent that interest is due on the overpayments in excess of the interest heretofore allowed and paid, and the interest due from the Lessor Corporations on their deficiencies computed on the basis of their being separate and distinct taxpayers.

The sole issue in the case is whether the plaintiff is entitled to interest on the overpayments as in the case of a refund, or as in the case of a statutory credit.

■ Section 284 (a) of the Revenue Act of 1926, 26 USCA § 1065 (a), provides that where there has been an overpayment of any income, war profits, or excess profits tax the amount of such overpayment shall (1) be credited against any income, war profits, or excess profits tax or any installment thereof then due from the taxpayer, and (2) any balance of such excess shall be refunded immediately to the taxpayer. It is settled law so far as the decisions of this court are concerned that the credit contemplated and authorized in this section must be made against taxes due the government from the same taxpayer making the overpayment. The Commissioner is without legal authority, under this provision, to credit an overpayment made by one taxpayer against taxes due from another taxpayer. David Daube v. United States, 59 F. (2d) 842, 75 Ct. Cl. 633, 1 F. Supp. 771, affirmed 289 U. S. 367, 53 S. Ct. 597, 77 L. Ed. 1261; Ford Motor Company v. United States (Ct. Cl.) 9 F. Supp. 590, 602, decided January 14, 1935; Hart Glass Manufacturing Co. v. United States, 73 Ct. Cl. 32, 48 F. (2d) 435. These decisions are in harmony with G. C. M. 6343, C. B. VIII–2, page 220,[1] and other rulings of the Bureau of Internal Revenue.

■ The controlling question, therefore, is whether the plaintiff was the taxpayer within the meaning of the statute with respect to the deficiencies of the Lessor Corporations against which its allowed and admitted overpayments were applied. The term "taxpayer" is defined in the various revenue acts to mean "any person subject to a tax imposed by the act." The taxpayer under this definition is undoubtedly the person against whom the Commissioner may legally assess a tax imposed by the statute. Could the Commissioner in this case have legally assessed the taxes due from the Lessor Corporations against the plaintiff? Unless this question can be answered in the affirmative, and we are clearly of the opinion it cannot be so answered, the plaintiff cannot be held to be the taxpayer in respect to such taxes. The deficiency assessments against the Lessor Corporations, as well as the overpayments allowed in favor of the plaintiff, resulted in a large measure from the Commissioner's ruling that they were not affiliated companies within the meaning of section 240 of the Revenue Acts of 1918 and 1921. As separate and distinct corporations they were separate and distinct taxpayers within the meaning of the statute. The Commissioner treated them as such in his determination of their tax liability and in the assessment of the tax. In doing so he merely followed the law. If they are separate and distinct taxpayers in the assessment of the taxes involved they must be given the same status in all matters relating to the collection of the taxes, including the crediting or refunding of overpayments. Ford Motor Company v. United States, supra. It is suggested, however, that the plaintiff was the taxpayer in this case with reference to the deficiencies against which its overpayments were applied by reason of the fact that it was under contractual obligations to pay any and all taxes that might be assessed against the Lessors. This contention, we think, is without merit. The obligation of plaintiff to pay taxes due from the Lessors to the government was in effect a part of the rental con-

---

[1] Holding in substance that the overpayment by an individual taxpayer may not be lawfully credited against a liability of the same taxpayer as transferee, and when so applied by consent, interest must be computed as though a refund had been made. See also O. D. 180 (Cum. Bul. 1, p. 309), as amended by O. D. 1068 (Cum. Bul. 5, p. 247).

sideration for the properties leased and any payments so made constituted taxable income to the Lessors. United States v. Boston & Maine Railroad Co., 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929. The contractual obligations of plaintiff to pay the Lessors' taxes did not make its liability in that respect a tax liability to the government, or make it the taxpayer with respect to such taxes—no more than if the contracts had merely required the plaintiff, as a part of the rental, to reimburse the Lessors the amount of any taxes paid by them.

■ The Lessor Corporations were the taxpayers within the meaning of the statute with respect to the deficiencies against which the plaintiff's overpayments were applied. No income, war profits, or excess profits taxes, or any installment thereof, were due from the plaintiff to the United States at the time of the purported credit of its overpayments for the years 1919 and 1920. The entire amount of the overpayments was therefore refundable to plaintiff, with interest thereon as provided in section 614 (a) (2) of the Revenue Act of 1928.[2] The arbitrary action of the Commissioner in using such refundable overpayments as statutory credits against taxes due the government from other taxpayers does not deprive plaintiff of the interest it was otherwise entitled to receive on the overpayments. The plaintiff agreed that the overpayments in its favor might be used in payment of the deficiencies of the Lessor Corporations, but as has been said it challenged the authority of the Commissioner to use such overpayments as statutory credits, thus depriving it of the interest it was entitled to receive on the overpayments, and served notice that it would take the case to court for a judicial review of its rights.

In Ford Motor Company v. United States, supra, the court in discussing the legal effect of the action of the Commissioner in applying an overpayment in favor of one taxpayer as a statutory credit against taxes due from another and different taxpayer, said: "At the time the overpayment * * * in favor of Ford Motor Company (Delaware) was applied to the deficiency assessment of * * * against Ford Motor Company (Michigan), no taxes or any installment thereof was then due from Ford Motor Company (Delaware) to the United

States. In this situation no legal credit of the overpayment could be made, and the entire amount was refundable to the plaintiff company as an overpayment, on which it was entitled to interest from the date of the payment of the tax to the date of the allowance of the refund. The consent of Ford Motor Company (Delaware) that the overpayment be applied to the part payment of the deficiency assessment against the Michigan company, and the application could not have been so made without its consent, Hart Glass Manufacturing Company v. United States, 48 F.(2d) 435, 73 Ct. Cl. 32, did not deprive it of interest on the overpayment which it was otherwise entitled to under the statute. What was done was for the mutual benefit of the government and the plaintiff company, and was a short-cut method of adjusting the tax accounts of the two companies. Hoyt et al. v. United States, 39 F.(2d) 739, 69 Ct. Cl. 604. This obviated resort to the more roundabout method of the government making a formal and technical refund of the overpayment to Ford Motor Company (Delaware) and that company in turn returning to the government the same amount in payment of the deficiency assessment against Ford Motor Company (Michigan). This was precisely the result attained by the short method used, and, while the transaction was characterized as a credit on the records of both the collector and the Commissioner, it was not such within the meaning of the statute, but was in substance a refund of the overpayment, as much so as if the usual procedure had been followed and a refund check had been issued for the amount."

What was said in the Ford Case is fully applicable to the instant case. It is therefore held that the plaintiff is entitled to interest on the overpayments of $90,636.41 for the year 1919 and $734,010.65 for the year 1920 as though refunds thereof had been made in the manner provided in the statutes.

■ Plaintiff in the petition asks for interest on the overpayments only to March 25, 1930. This was the date on which the Commissioner signed the schedules of overassessments and, under the provisions of section 1104 of the Revenue Act of 1932, 26 USCA § 4104, was the date of the allowance of refund or credit in respect to such

---

[2] Section 614 (a) (2) of the Revenue Act 1928, 26 USCA § 2614 (a) (2): "In the case of a refund, from the date of the overpayment to a date preceding the date of the refund check by not more than 30 days, such date to be determined by the Commissioner."

602

taxes. There can be no question that plaintiff is entitled to interest to at least this date, and it is unnecessary to decide whether interest, if claimed, would, under the facts disclosed, be allowable to a later date, and we do not decide that question.

The plaintiff, however, in its petition does not seek recovery of the full amount of interest it is entitled to receive under this holding but consents that, in accordance with its verbal agreement with the Assistant Secretary of the Treasury, there be deducted from the interest legally due on its overpayments an amount equal to the interest due from the Lessors on the deficiencies assessed against them. Judgment will be awarded in accordance with the prayer of the petition. The formal entry of judgment, however, will be withheld pending a supplemental report by Commissioner Richard H. Akers, to whom the case is referred for the purpose of computing the exact amount due plaintiff under this opinion.

The Commissioner is directed to compute interest on the overpayments from the dates of payment to March 25, 1930, and to compute interest on the deficiencies from February 26, 1926 to March 25, 1930. It is so ordered.