FURNITURE EXHIBITION BUILDING COMPANY AND KLINGMAN SAMPLE FURNITURE COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18596.   Promulgated December 24, 1931.

*J. S. Seidman, Esq.*, and *F. E. Seidman, C. P. A.*, for the petitioners.

*Brooks Fullerton, Esq.*, for the respondent.

## OPINION.

LOVE: By agreement of counsel at the hearing only four issues are submitted for our determination. All other issues raised by the pleadings are disposed of either by the admissions of the respondent or are waived by the petitioners. The issues before us for determination are (1) whether the consolidated invested capital as determined by the respondent for each of the years in question is understated by the amount of $200,000; (2) whether invested capital for 1919 should be reduced on account of the prorated 1918 income and profits taxes; (3) whether taxes for 1919 and 1920 are to be apportioned between petitioners on the basis of the net income properly assignable to each, and (4) whether the Board has jurisdiction with respect to any deficiency against the Klingman Company for the years 1917 through 1920.

With respect to issue No. 1, petitioners contend that the respondent has erroneously understated the paid-in consolidated invested capital by $200,000 as a result of his treatment of intercompany stockholdings. The respondent, however, contends that his action is correct. The computations of both parties are set forth in our findings.

In July, 1914, the Building Company purchased all of the capital stock of the Klingman Company of a par value of $150,000. About the same time the Klingman Company purchased 50 per cent of the capital stock of the Building Company, the total par value of whose stock was $300,000. The respondent has determined that the cost to the Building Company of the stock of the Klingman Company so acquired, was $50,000, and that the cost to the Klingman Company of the stock acquired by it in the Building Company, was also $50,000. There is no controversy between the parties with respect to the respondent's determination as to these costs. All of the $150,000 par value of the capital stock of the Klingman Company and the $300,000 par value of the capital stock of the Building Company was paid in in full and at no time was any part of these amounts of paid-in capital ever distributed or liquidated.

Consolidated invested capital is to be determined by computing separately the statutory invested capital of each corporation as defined by section 326, and then eliminating from the combined statutory invested capital of the affiliated group, so determined, the amount of cash or its equivalent, paid out by the group in the acquisition of subsidiary stock.

In addition to the amount so paid out, if any, the statutory invested capital, as defined by section 326, must also be reduced by the amount of any liquidating dividend, or amount otherwise withdrawn from the original investment and returned to the stockholders. *Middlesex Ice Co. et al.*, 9 B. T. A. 156; *American Bond & Mortgage Co.*, 15 B. T. A. 264; *Grand Rapids Dry Goods Co.*, 12 B. T. A. 696; *Golden Cycle Corporation* v. *Commissioner*, 18 B. T. A. 118; affd., 51 Fed. (2d) 927.

Applying the foregoing principles to the instant case, we conclude that in determining the consolidated invested capital of petitioners, the invested capital of each should be computed separately in accordance with the provisions of section 326, and there should then be eliminated from the combined statutory invested capital the amount of $100,000 representing the total cost to the group of the intercompany stockholdings which was paid out of the group and returned to the estate of P. J. Klingman. In other words, we hold that the item subtracted in petitioners' computation of consolidated invested capital originally reported and adopted by the respondent in his computation should have been $100,000, instead of $300,000; from which it follows that the consolidated invested capital, as determined by the respondent, is understated by the difference, or $200,000. Petitioners' contentions on this issue are sustained.

With respect to the respondent's reduction of consolidated invested capital for 1919 on account of 1918 income and profits taxes prorated in accordance with the dates upon which the four installments of such taxes became payable, petitioners contend that such action was erroneous and rely upon the decision in *Fawcus Machine Co.* v. *United States*, 68 Ct. Cls. 784. This decision, which has been affirmed by the United States Supreme Court in *Fawcus Machine Co.* v. *United States*, 282 U. S. 375, since the briefs were filed, is adverse to the contention here advanced. On this issue we sustain the action of the Commissioner.

The petitioners contend that since they did not enter into nor file with the respondent any agreement with respect to the apportionment of the taxes for 1919 and 1920, the respondent erred in failing to apportion such taxes between them on the basis of the net income properly assignable to each. The respondent contends that since the petitioners filed consolidated returns for 1919 and 1920, and as

the entire amounts of the tax shown thereon were assessed against and paid by the Building Company during 1920 and 1921, respectively, and as no question as to apportionment of taxes was raised by either of the petitioners until about the time of the hearing, when the petition was amended to raise this issue, the petitioners should not now be heard to complain because the deficiencies for these years were not apportioned between them.

The petitioners in support of their contention rely, among other cases, on *Essex Coal Co.* v. *Commissioner*, 39 Fed. (2d) 892, wherein the court reversed our decision reported at 12 B. T. A. 994. In that case the two affiliated corporations had the same officers, used the same office and had a common control and management. The two corporations filed a consolidated return. No express agreement was entered into between them as to how the taxes due for the taxable year in controversy should be assessed against them nor did they notify the Commissioner as to how he should assess such taxes. The amount of the tax shown on the consolidated return was assessed against the Essex Coal Company. The second and third installments of the tax were paid by checks of the Essex Coal Company, while the first and fourth installments were paid by checks of the other corporation. In reaching the conclusion that the acts of the parties and the other circumstantial evidence established that there was an understanding or agreement between the two corporations that the tax should be assessed against the Essex Coal Company, we said:

The agreement referred to in this statute is one between the corporations included in the consolidated return. It is not required to be in writing or to be in any particular form or language. Such a contract may be implied as well as express. Such an agreement does not relate to the payment of the tax but only to its assessment. Whether such an agreement was made may be shown by circumstantial evidence and the conduct of the parties as well as the testimony of witnesses. Here the officers of the two corporations were the same individuals. The individual who represented and acted for one company as president, acted in the same capacity for the other. An agreement between the said officers in one capacity and the same individuals in another capacity might have been a mere mental process evidenced only by the outward acts and conduct of the parties. It would have been a useless process for the president of one company to agree with himself as president of another company, and for the other officers in their respective capacities to agree with themselves by any express language. An agreement which is inferred from the acts and conduct of parties is just as effective as any other kind of an agreement.

We think that this case is governed by the principles set forth in the case of *In re Temtor Corn & Fruit Products Co.*, 299 Fed. 326, wherein the court stated:

It is finally contended on behalf of the trustee in bankruptcy that, even though the tax here in question was properly computed on the basis of the consolidated return, the government in making the assessment should have apportioned the tax between the two companies, as provided

in section 240 of the Revenue Act of 1918. The evidence shows that the tax was computed as a unit, and was not apportioned, but was all assessed against the Temtor Company. Under the statute it was proper for the two corporations concerned to agree as between themselves as to the proportion of the entire tax to be assessed against each. As the entire tax appears to have been assessed against the Temtor Company, and as that company, without objection or request for an apportionment, paid three quarterly installments of the tax, it must be inferred that both companies agreed to the assessment as made. As already stated, the companies had practically the same officers and directors, and the course followed by them was the legal equivalent of an agreement and request that the entire tax be assessed against the Temtor Company. In the present posture of the case, I do not think it is open to either company to object to the course taken by the government in assessing the tax.

Considering all the evidence in the case, it is our opinion that an agreement was entered into between the two corporations to the effect that the total tax might be assessed against the petitioner.

In *American Textile Woolen Co. et al.*, 23 B. T. A. 670, we considered the decision of the Circuit Court of Appeals and there said:

We have considered the decision of the Circuit Court of Appeals for the Sixth Circuit, 39 Fed. (2d) 892, reversing our determination in the *Essex* case, *supra*. We are of opinion, however, that the principle laid down in the determination mentioned is sound and that the court's decision is only that the facts presented did not warrant our conclusion that an agreement for allocation of the tax existed among the corporations therein involved.

In the instant case the petitioners filed consolidated returns in which no mention was made as to any agreement between them as to how the tax should be assessed against them. Neither did either of them file with the respondent any agreement with respect to the apportionment of the taxes between them. The amount of the tax shown on the returns was assessed against the Building Company. The evidence shows that when the tentative return for 1919 was filed for the petitioners on March 16, 1920, the Building Company made a payment of $2,125, which was more than one-half of the consolidated tax liability reported on the completed return for that year. The amounts paid by the Building Company on September 14, 1920, and December 15, 1920, completed the payment of the tax shown on the consolidated return for 1919. Payments of the tax shown on the consolidated return for 1920 were made by the Building Company during 1921, on May 31, June 15, September 13, and December 14. The same persons were officers in each of the petitioners and the petitioners occupied the same office. Vanden Bosch had general supervision over the activities of both corporations and had particular supervision over their tax matters. So far as the record shows, the parties made no objection to the respondent's action in assessing against the Building Company the tax reported on the

consolidated returns or his determination of the deficiencies against that company until the hearing in June, 1930, when an amendment to the petition was filed raising the question. Thus it is seen that for about 10 years with respect to the 1919 taxes and for about 9 years with respect to 1920 taxes, the petitioners remained silent as to the respondent's action with respect to the original assessments, apparently acquiescing in what had been done. It was more than four years after the respondent made his determination of the deficiencies here involved before the petitioners raised any objection as to the action of the respondent with respect to this issue.

In support of their contention the petitioners submitted the testimony of Vanden Bosch, who testified that no agreement was made between the two corporations for the apportionment between them of the taxes for 1919 and 1920. As against this testimony of Vanden Bosch, who was an officer in both corporations and who, according to his own testimony, was in direct charge of the tax matters of both corporations, we have his course of dealings for a period of some 9 or 10 years. If, as he testified, there was no agreement as to the apportionment of the taxes, why did he remain silent when the taxes were assessed against the Building Company or why did he permit that company to pay such assessments? Or why was this contention not raised before the respondent when other contentions respecting the tax liability for these years were presented to him? These and other questions remain unanswered by the record. Considering as a whole the evidence on this point, we are not prepared to reverse the action of the respondent. See *Popular Price Tailoring Co.* v. *Commissioner*, 33 Fed. (2d) 464; In re *Temtor Corn & Fruit Products Co.*, *supra*, affd. *sub nom.* *Schlafly* v. *United States*, 4 Fed. (2d) 195; *Morganite Brush Co., Inc.*, 24 B. T. A. 776.

While the petition as amended raises the question as to whether we have jurisdiction with respect to any deficiency against the Klingman Company for the years 1917 through 1920, the petitioners in their briefs direct their argument only to the years 1919 and 1920, making no reference to that portion of the issue relating to 1917 and 1918.

The petitioners contend as to the years 1919 and 1920 that we have no jurisdiction with respect to the Klingman Company, since the deficiency notice was addressed to the Building Company and nowhere in it is there any mention made of there being a deficiency in the taxes of the Klingman Company for these years. The respondent contends that, since the petitioners filed consolidated returns for these years that authorized and invited a joint deficiency notice, and the notice having been directed to the Building Company, notice to one was notice to both.

Since the petition as amended has raised the question of our jurisdiction of the tax liability of the Klingman Company for all the years 1917 through 1920, our discussion of the matter will not be limited to the years 1919 and 1920.

In this case the Commissioner determined a deficiency against the Klingman Company for the years 1917 and 1918, and sent a notice of such deficiency to the Furniture Company, but did not send a notice to the Klingman Company, and both companies appealed to the Board.

Under the authority of the case of *C. A. Bryan et al.*, 19 B. T. A. 111, we hold that for the years 1917 and 1918 the Board has jurisdiction of the Klingman Company.

For the years 1919 and 1920, the Commissioner did not determine a deficiency against the Klingman Company, but that company joined in the appeal with the Furniture Company.

On authority of the following cases, we hold that the Board does not have jurisdiction of the Klingman Company for the years 1919 and 1920: *Caughey-Jossman Co.*, 8 B. T. A. 201; *New York Talking Machine Co. et al.*, 13 B. T. A. 154; *Phoenix National Bank et al.*, 14 B. T. A. 115; *American Creosoting Co.*, 12 B. T. A. 247.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK, dissenting: I dissent in so far as the opinion holds that we have jurisdiction as to the Klingman Sample Furniture Company for the years 1917 and 1918.

MARQUETTE, SMITH, STERNHAGEN, TRAMMELL, and McMAHON agree with this dissent.