### SEYMOUR MFG. CO. v. BURNET, Commissioner of Internal Revenue.
### No. 5289.

Court of Appeals of the District of Columbia.
Argued Jan. 12, 1932.
Decided Feb. 1, 1932.

Chester A. Gwinn and Adrian C. Humphreys, both of Washington, D. C., for appellant.

Sewall Key, William Cutler Thompson, C. M. Charest, and Frank M. Thompson, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from a decision of the Board of Tax Appeals. There are two questions involved.

Petitioner is a Delaware corporation engaged in the manufacture of axes, scythes, knives, etc. In January, 1921, it acquired the assets and assumed the liabilities of the Dunn Edge Tool Company. The book value of these assets at the date of acquisition was $187,789.06, for which petitioner paid $36,000 in cash and delivered its preferred class A stock in the amount of $108,000. It entered the assets and liabilities on its books at the same values as appeared on the books of the Dunn Edge Tool Company. The difference between the par value of the stock and the cash paid, on the one hand, and the book value of the assets acquired, on the other, was $43,789.06. The Commissioner refused to allow this last-mentioned item as a part of petitioner's invested capital. The Revenue Act of 1921, which is the applicable statute, section 326 (a), 42 Stat. 227, 274, provides that, as used in this title, the term "invested capital" means "actual cash value of tangible property * * * bona fide paid in for stock or shares, at the time of such payment."

Actual value is always a question of fact, and, after the Commissioner has acted in determination of that question, the burden of establishing that his determination is erroneous must be assumed and discharged by the taxpayer. This ordinarily would involve evidence adequate to overcome the presumption in favor of the accuracy of the Commissioner's finding.

In this case inaccuracy might have been proved by showing that the value of the shares of stock which were issued in exchange for the property was in excess of the par value and by appraisements or evidence of actual value of the tangible property acquired; but instead the taxpayer relied entirely upon the book values found in the records of its vendor. This, we think, was not enough. In the absence of any evidence of excess value over par value of the shares of stock, it was an entirely fair presumption to the taxpayer that the par value and the actual value were the same. Giving effect to this presumption, it would be neither an arbitrary nor capricious decision to hold, in the absence of anything else, that the price paid was the fair equivalent of the thing acquired. Without more, therefore, we are disposed to think the decision of the Board on this phase of the case was correct and should be affirmed.

The determination of the Commissioner, which the Board sustained, as to the other contention of the taxpayer, we think, is incorrect. The record shows that among the assets of the Dunn Edge Company acquired by the taxpayer by purchase in 1921 were the items listed below with their book values.

| | |
|---|---|
| Land | $ 6,798.09 |
| Buildings | 5,031.01 |
| Machinery and equipment | 52,448.51 |
| Office furniture and fixtures | 2,276.22 |
| Delivery equipment | 925.41 |

The aggregate of these amounts is .............. $67,479.24

In July, 1923, or approximately two and a half years after the purchase, taxpayer sold these assets for $49,540.80. During the period of ownership it had expended in improvements the sum of $3,534.44. The Commissioner having determined, as we have seen, that the book value of all the assets acquired was $43,789.06 in excess of real value, for the purpose of ascertaining the gain from the sale of part deducted the entire overvaluation from the five items enumerated above, thereby reducing, as of the date of acquisition, the value or cost of these items from $67,479.24 to $23,690.18, and from this amount deducted for depreciation, for the two and a half years they were held by taxpayer, $22,871.86 additional, as the result of which taxpayer was required to pay a tax,

under the gain and loss section of the Revenue Act (42 Stat. 229, § 202), on all but an insignificant part of the selling price. This result, in the circumstances we have mentioned, is so obviously unfair as to require correction.

The total book value of the assets acquired January 1, 1921, amounted to approximately $243,000. For these it paid $108,000 in stock and $36,000 in cash, or a total of $144,000, and it assumed liabilities amounting to a little in excess of $50,000. The net value was, therefore, as heretofore stated, $187,789.06. Among the assets purchased was one item called "Inventories" in the amount of $152,954.30, and another of "Accts. and notes receivable" in the amount of $10,000. The Commissioner accepted these doubtful items at book value, but, on the other hand, reduced the land and buildings value to an extent which subsequent events demonstrate was grossly incorrect.

■ Nor are we able to follow the Commissioner's method of determining the amount of depreciation which was charged against the property sold for the two and a half year period it was owned by the taxpayer. We have already seen this value, as reflected in the books of the company, at the time of acquisition was above $67,000. A little more than $3,000 was added during ownership for improvements. The Commissioner arbitrarily, as we think, reduced this book value to a little more than $23,000 actual value, and this last-named figure he further reduced a little more than $22,000 on account of depreciation. Just how the total amount of depreciation was ascertained is not clear. Obviously it did not represent depreciation for the two and a half years alone, and therefore, we assume, must have been reached by including depreciation for the period of use in the hands of the Dunn Company, but, in view of the write-down in value as of the date of purchase by taxpayer from Dunn, this would have been manifestly unfair, but, whatever the method, and however the result was obtained, we are faced with a situation in which property, consisting of lands, buildings, equipment, and machinery, with a book value as of January 1, 1921, of $67,000, on which $3,000 in improvements was expended, first by write-down and then by depreciation, was reduced in value, for the purpose of ascertaining gain from sale, to approximately $5,000, and a tax, based on the difference between this last figure and $50,000, the selling price, imposed. The statement of this result condemns it.

We have sustained the Commissioner's reduction of the value of the assets acquired January, 1921, in his determination of the invested capital item because the taxpayer failed, or was unable, to show a greater value, and, if the Commissioner had applied this reduction ratably to the several items embraced in that purchase, the taxpayer, without a definite showing of value, would not be heard to complain, but to take, as the Commissioner did, the entire amount of excess valuation and charge it against the specific items of property which the taxpayer had shortly after acquisition sold for a price substantially similar to the book value price and depreciate it almost to the vanishing point, so that more than 90 per cent. of the amount received in its sale should be designated as profit, is obviously such an improper method of determining value as may not be sustained.

In these circumstances, we have a case which we must remand for further proceedings not inconsistent with this opinion.

Affirmed in part.

Reversed in part and remanded.