## WESTMORELAND SPECIALTY CO. v. BURNET, Commissioner of Internal Revenue.
### No. 5345.

Court of Appeals of the District of Columbia.

March 14, 1932.

Geo. E. H. Goodner, of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Wm. Cutler Thompson, C. M. Charest, and Stanley Suydam, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a tax case and involves the question whether petitioner is entitled to deduct from gross income for the calendar year 1921 the sum of $30,800, representing the par value of 308 shares of its capital stock, which were issued to its president in January, 1922, in accordance with an agreement claimed to have been made June, 1921.

The appropriate statute is 234 (a) of Revenue Act 1921 (c. 136, 42 Stat. 227, 254). The statute provides: "That in computing the net income * * * there shall be allowed as deductions: (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * * * "

Article 107 of regulations 62 provides: "Bonuses to employees will constitute allowable deductions from gross income when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered."

Petitioner was a Pennsylvania corporation engaged in the manufacture of glass specialties, and had an authorized capital stock of one thousand shares of the par value of $100 each. Until 1922 only 850 shares were issued, and these were divided as follows: George R. West, who was president, 327 shares; Charles H. West, secretary treasurer, 192 shares; Ira F. Brainard, 331 shares. Dissatisfaction arose over the conduct of the business, as a result of which George R. West resigned as president in May, 1921, and Charles H. West was elected his successor, and Brainard, who had not hitherto been connected with the corporation in an active way, though at all times a director, was elected secretary treasurer for the balance of the year. As a result of George West's resignation, the principal responsibility of management fell on his brother, Charles West, and the latter expressed a disinclination to discharge this re-

sponsibility on the same basis of compensation as formerly. Brainard, recognizing the necessity of meeting this objection, agreed with Charles West that the corporation would acquire the 327 shares of stock belonging to George West for the sum of $60,000, and that the unissued 150 shares of authorized stock would be issued, and the aggregate of these two blocks of stock divided in such way as to give Charles H. West and Brainard each a half ownership in the stock of the corporation.

Charles West, in his testimony, describes the transaction as follows: The substance of the agreement entered into at the time his brother retired from the presidency was that witness and Mr. Brainard would issue stock so as to equalize the ownership of the company between them, so that from that time on they would be equal partners, so to speak, in the business, although in corporate form.

The plan was consummated by the purchase by the corporation of George West's shares of stock for $60,000, of which 308 shares were later issued to Charles West and 19 to Brainard, who also received the 150 shares of newly issued stock. Petitioner claims the right to deduct the par value of the shares transferred to Charles West, in other words, the sum of $30,800, as compensation for services for the year 1921. The Board held against the claim, and we think correctly.

We start, of course, with the presumption that the Commissioner's determination was correct and that the findings of fact by the Board of Tax Appeals are not the subject of review if based upon substantial evidence. The question then is, Was the payment or transfer of stock made as compensation for personal services, and were such personal services actually rendered?

The board determined that the treasury stock was transferred for the purpose of effecting an equal distribution of appellant's authorized capital between Charles H. West and Brainard, and, inferentially at least, that this was done to retain Charles West's services to the corporation indefinitely and in effect to make him an equal partner in the business. If the Board's conclusion in this respect is correct, it forecloses the question, for the reason that, if the motive of the payment was as found by the Board, the claim now made is untenable. We have, therefore, been at some pains to examine the evidence. Petitioner's books show that Charles West, first as secretary treasurer and later as president, received in the year in question salary of $9,000 and a cash bonus of $3,000, and that Brainard, as secretary and treasurer for the last seven months of the year, received salary of $5,250 and a cash bonus of $3,000. There is nothing else on the books of the corporation to show either by resolution or payment any further compensation to Charles H. West. The $60,000 transaction resulting in the acquisition of the stock, the most of which Charles West received, was recorded in the books of the corporation as a capital transaction. The entries in relation to the purchase of the stock and the proper accounting method to balance the books was the subject of a correction in the accounts made by an expert called in specifically for that purpose, and there is nothing either in the original entry or in the subsequent correction which indicates that the purchased and reissued capital stock was in compensation of the officers, or any of them, unless the resolution directing the issuance of the stock to Charles West in consideration of "one dollar and other valuable consideration" may be so called; but when it is considered that at the same meeting Brainard, who admittedly performed no special services, was voted 169 shares, likewise in consideration of $1, and when the evidence of the parties themselves, all of which supports rather than refutes the Board's theory, is also considered, the conclusion is inevitable that the transaction is precisely as found by the Board, and that the present claim is purely an afterthought, which it would be grotesque to adopt.

Affirmed.