**CONTINENTAL OIL CO. v. HELVERING,**
Com'r of Internal Revenue.

No. 6918.

United States Court of Appeals for the
District of Columbia.

Decided Oct. 3, 1938.

See, also, 63 App.D.C. 5, 68 F.2d 750.

Arthur B. Hyman, of New York City, for petitioner.

James W. Morris, Sewall Key, Morrison Shafroth, Frank M. Thompson, and Ellis N. Slack, all of Washington, D. C., for respondent.

Before MILLER and EDGERTON, Associate Justices, and PROCTOR, Associate Justice of the District Court of the United States for the District of Columbia.

MILLER, Associate Justice.

This is a petition to review a decision of the Board of Tax Appeals [1] determining transferee liability for deficiencies in income taxes for the period January 1 to March 15, 1920, in the amount of $37,-344.59.

During the period involved, the Mutual Oil Company of Maine, hereinafter referred to as Maine, owned the entire capital stock of the Mutual Oil Company of Arizona, Mutual Refining and Producing Company, and Northwestern Oil Refining Company, which, for convenience, will be referred to as Arizona, Mutual Refining, and Northwestern, respectively. On March 15, 1920, Maine transferred all of its assets to petitioner's predecessor, also a Maine corporation, originally organized under the name of Elk Basin Consolidated Petroleum Company, in exchange for 600,000 shares of the capital stock of the latter. The name of Elk Basin Consolidated Petroleum Company was changed on December 22, 1921, to the Mutual Oil Company; subsequently, in the year 1925, the said Mutual Oil Company changed its

---

[1] Revenue Act of 1926, c. 27, §§ 1001-1003, 44 Stat. 9, 109-110, as amended, 47 Stat. 169, 286, 26 U.S.C.A. §§ 641, 642, 644, 645.

104

name to the Continental Oil Company, which latter company is the petitioner herein; and for convenience both petitioner and its predecessors will be referred to hereinafter as petitioner.

In 1921, petitioner filed a consolidated income and profits tax return for the calendar year 1920 on behalf of itself and its affiliates, and included therein the income of Maine, Arizona, Mutual Refining, Northwestern, and itself, for the entire year, and set up and asserted the consolidated invested capital of all the companies as of January 1, 1920. The return disclosed a net tax liability of $200,707.45, which was paid by petitioner.

On April 30, 1921, Mutual Refining and Northwestern, without consideration therefor, transferred their assets to Arizona and dissolved. The value of these assets was sufficient in each instance to satisfy the liability for income and excess profits taxes which respondent contends existed against the transferors. On December 31, 1921, Arizona, also without consideration for the transfer, conveyed all its assets to petitioner and dissolved. The value thereof was sufficient to meet all tax liabilities of Arizona as well as those of Mutual Refining and Northwestern, should such liabilities exist.

The Commissioner of Internal Revenue, respondent herein, audited the consolidated return filed by petitioner for itself and its affiliates and determined that two separate corporate affiliations existed within the time covered by the return—one with Maine as parent and Arizona, Mutual Refining and Northwestern as subsidiaries for the period January 1, 1920 to March 15, 1920; the other with petitioner as parent and Maine and the other three as its subsidiaries for the period March 15 to December 31, 1920. Upon the theory that this required the filing of two consolidated returns instead of one, respondent determined deficiencies for the first period and asserted liability therefor against the petitioner as transferee, by the usual sixty-day letter.[2] In determining these deficiencies, which are the subject of this proceeding, respondent gave no credit thereon for the payment of $200,707.45, which was the amount of the tax shown to be due upon the consolidated return filed by petitioner for the year 1920. Respondent, however, issued a certificate of overassessment to the petitioner in the sum of $12,779.97 for the year, which certificate gave credit for the payment of taxes in the sum of $200,707.45.[3]

In computing the amount of the deficiencies, respondent fixed the invested capital of Maine and its subsidiaries at $3,192,636.27 as of January 1, 1920, and apportioned to the period January 1 to March 15, 1920, two and one-half twelfths thereof, i. e., $665,132.55. The accuracy of these figures is conceded although the method of apportionment is not. For the year 1920 the income of Arizona was $187,905.41; that of Northwestern, $420,977; and that of Mutual Refining, $403,672.45. Respondent apportioned to the period in question two and one-half twelfths thereof in the following amounts: $37,991.80 for Arizona; $85,115.57 for Northwestern; and $81,616.83 for Mutual Refining. Maine, however, suffered a loss of $8,255.02, and consequently, no transferee liability was asserted against petitioner in respect of that company.

The Revenue Act of 1918, 40 Stat. 1057, which is the applicable statute in this case, not merely permitted the filing of consolidated returns—as in the case of later Acts[4]—but required that affiliated companies must file such returns.[5]

[2] Upon a petition for redetermination of the deficiency, the Board of Tax Appeals held that the deficiency notice asserted a liability against petitioner, as transferee, for taxes, if any, owing by Maine only, and that inasmuch as that company suffered a loss during the period in question, there was no liability against petitioner. Upon review, this court reversed the Board and held that the deficiency notice asserted not only a liability as transferee of Maine, but a liability as transferee of Arizona, Mutual Refining and Northwestern. The case was remanded for further proceedings before the Board, and from its decision therein the present appeal arises. Hel-

vering v. Continental Oil Co., 63 App.D. C. 5, 68 F.2d 750, certiorari denied 292 U.S. 627, 54 S.Ct. 629, 78 L.Ed. 1481.

[3] The certificate of overassessment has been protested by petitioner and its claim for refund has not been finally determined.

[4] See Burnet v. Aluminum Goods Mfg. Co., 287 U.S. 544, 547, note 1, 53 S.Ct. 227, 229, 77 L.Ed. 484. The consolidated return provision was eliminated entirely in the Revenue Act of 1934, c. 277, § 141, 48 Stat. 680, 720–721, 26 U.S.C.A. § 141, except as to railroad corporations. See 4 Paul and Mertens, Law of Federal Income Taxation (1934) § 38.01.

[5] Revenue Act of 1918, c. 18, § 240(a),

There is no question that two separate affiliations existed during the year 1920. During the period January 1 to March 15, there was an affiliation consisting of Maine, Arizona, Mutual Refining and Northwestern, of which Maine was the parent. After March 15 there was a new affiliation consisting of the four corporations named above, together with petitioner, of which the latter was the parent. Consequently, only by the filing of a consolidated return for each affiliation which existed during the year could the statute be complied with.[6] The affiliation of which Maine was parent terminated on March 15, when petitioner took over control thereof;[7] consequently, a return for the two and one-half months' period was properly required by the Commissioner. By so doing he was better able to comply with the requirement that he levy the tax according to the true net income and invested capital of the business enterprise involved in each case,[8] for the reason that each affiliation constituted a different tax computing unit for the taxable year. The case of Sweets Co. of America v. Commissioner, 2 Cir., 40 F.2d 436, is distinguishable because, in that case, " * * * there was no period in which any two affiliates were in existence at the same time but unaffiliated. The business of all was thus strictly a unit throughout the year, though managed by successive companies."[9] In the present case (1) all the five companies were in existence throughout the year; (2) the petitioner was in existence and was unaffiliated with the others during the two and one-half months' period in question; (3) the business of all

was definitely not a unit throughout the year for tax computing purposes, or otherwise; (4) the petitioner was not organized during the year as a management company, and (5) was not taken into the previously existing affiliation for management purposes.

Moreover, American Paper Exports, Inc., v. Bowers, 2 Cir., 54 F.2d 508, although relied upon by petitioner, is not analogous to the present case. There an affiliation occurred during the taxable year; one of the two affiliated corporations had no prior existence; there was no prior or other affiliation; and a consolidated return was filed by the only affiliation which existed during the taxable year. Nevertheless, the court said: "A consolidated return is in any case required for so much of the year as the companies were affiliated. [Authorities cited] If both affiliates are in existence and active before affiliation, obviously, more than one return becomes therefore necessary, and so it has been held. Appeal of American La Dentelle, Inc., 1 B.T.A. 575; Appeal of Green River Distilling Co., 16 B.T.A. 396. At least for the period of its separate activity each must file a separate return." The necessity for separate returns is even more obvious in the present case, where each of two affiliations had a separate existence and each engaged in separate activities during the taxable year.

In Swift & Co. v. United States, Ct.Cl., 38 F.2d 365, and American-Hawaiian S. S. Co. v. United States, Ct.Cl., 46 F.2d 592, also relied upon by petitioner, the Court of

40 Stat. 1057, 1081: "That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return * * *." Commissioner v. Krein Chain Co., 6 Cir., 72 F.2d 424, 425; Stonega Coke & Coal Co. v. Commissioner, 3 Cir., 57 F.2d 1030, 1031.

6 Appeal of American La Dentelle, Inc., 1 B.T.A. 575; Green River Distilling Co. v. Commissioner, 16 B.T.A. 396; Fidelity Nat. Bank & Trust Co. v. Commissioner, 8 Cir., 39 F.2d 58; Lucas v. St. Louis Nat. Baseball Club, 8 Cir., 42 F.2d 984, certiorari denied St. Louis Nat. Baseball Club v. Burnet, 282 U.S. 883, 51 S.

Ct. 87, 75 L.Ed. 779; Buffalo Brake Beam Co. v. United States, Ct.Cl., 19 F. Supp. 250, 253.

7 Sweets Co. of America v. Commissioner, 2 Cir., 40 F.2d 436.

8 Handy & Harman v. Burnet, 284 U. S. 136, 140, 52 S.Ct. 51, 52, 76 L.Ed. 207; Burnet v. Aluminum Goods Mfg. Co., 287 U.S. 544, 547, 53 S.Ct. 227, 229, 77 L.Ed. 484; Atlantic City Electric Co. v. Commissioner, 288 U.S. 152, 154, 53 S.Ct. 383, 384, 77 L.Ed. 667; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 291, 55 S.Ct. 158, 159, 79 L.Ed. 367; McLaughlin v. Pacific Lumber Co., 293 U.S. 351, 355, 55 S. Ct. 219, 220, 79 L.Ed. 423; Commissioner v. Krein Chain Co., 6 Cir., 72 F.2d 424, 426.

9 American Paper Exports, Inc., v. Bowers, 2 Cir., 54 F.2d 508, 509.

Claims approved a Treasury regulation [10] which provided that when an affiliation existed at the beginning of a year and additional corporations entered the affiliation during the year, " * * * the parent or principal corporation should file a consolidated return and include the income of such [additional] corporations from the date of change of stock ownership. * * * the subsidiary or subordinate corporation whose status is changed during the taxable year should make a separate return for that part of the taxable year during which it was outside the affiliated group." In the present case it was the parent which was changed. Each of the two affiliations had a separate parent—Maine in the one and petitioner in the other. It was the duty of the parent in each case to make a consolidated return for the affiliation of which it was parent, covering that portion of the taxable year during which the affiliation of which it was parent existed.

■■ The error of petitioner's contention lies in the assumption that only one affiliation existed during the year; that petitioner merely became a new member of the existing affiliation; hence, that only a single consolidated return was necessary. Whatever may be the situation when a new subsidiary corporation is added to an existing affiliation, the parent remaining the same,[11] or when a new management corporation is created for the sole purpose of parenthood of an existing affiliation, without other change in the business unit,[12] it is certainly not true that the same affiliation existed here, where one going business unit, petitioner, acquired control of and took over another going business unit, the affiliation of which Maine was parent.

The situation of the present case is that which was contemplated in Treasury Regulations 45, promulgated under the Revenue Act of 1918, as follows: "Art. 634. *Change in ownership during taxable year.*—When one corporation owns or controls substantially all the stock of another corporation at the beginning of any taxable year, but during the taxable year sells or parts with the control of all or a majority of such stock to outside interests not affiliated with it, or when one corporation during any taxable year acquires the ownership or control of substantially all the capital stock of another corporation with which it was not previously affiliated, a full disclosure of the circumstances of such changes in ownership shall be submitted to the Commissioner. In accordance with the peculiar circumstances in each case the Commissioner may require separate or consolidated returns to be filed, to the end that the tax may be equitably assessed."

Article 632 of Treasury Regulations 45 provides: " * * * The consolidated return shall be filed [on Form 1120] by the parent or principal reporting corporation in the office of the collector of the district in which it has its principal office. Each of the other affiliated corporations shall file in the office of the collector of its district form 1122, along with the several schedules indicated thereon." Being in full force, expressly authorized by statute, and not in conflict therewith, this regulation has the force and effect of law.[13] Thus, the consolidated return was required to be filed by the parent or principal corporation and, obviously, could be filed for only that period of time during which the parent was a member of the affiliation. In Swift & Co. v. United States, Ct.Cl., 38 F.2d 365, 373, relied upon by petitioner in support of its contention, the Court of Claims expressly stated that under the Act of 1918, and the regulations promulgated thereunder, an affiliation " * * * continues for the purpose of computing the tax *as long as the parent corporation remains the same.*" [Italics supplied] It is also there said: " * * * In fact this construction was

---

[10] U. S. Treas. Regs. 45, Art. 634, as amended by T.D. 4022, Cum.Bul. VI-1, p. 258; Regs. 62, Art. 634, as amended by T.D. 4023, Cum.Bul. VI-1, p. 259; Regs. 65, Art. 634, as amended by T.D. 4024, Cum.Bul. VI-1, p. 148; Regs. 69, Art. 634.

[11] Swift & Co. v. United States, Ct.Cl., 38 F.2d 365; American-Hawaiian S. S. Co. v. United States, Ct.Cl., 46 F.2d 592; Marvel Equipment Co. v. Commissioner, 3 Cir., 67 F.2d 354.

[12] Sweets Co. of America v. Commissioner, 2 Cir., 40 F.2d 436; American Paper Exports, Inc., v. Bowers, 2 Cir., 54 F.2d 508.

[13] Commissioner v. Krein Chain Co., 6 Cir., 72 F.2d 424, 425; Pictorial Review Co. v. Helvering, 63 App.D.C. 21, 23, 68 F.2d 766, 768. See, also, Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 157, 64 L. Ed. 297; United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926; United States v. Birdsall, 233 U.S. 223, 231, 34 S.Ct. 512, 58 L.Ed. 930.

carried forward into the new regulations 75, under the Revenue Act of 1928, and made more definite in that the new regulations required specifically that *the parent corporation should remain as a parent in order that an affiliated group should remain in existence.*" [Italics supplied] [14]

Also, in American-Hawaiian S. S. Co. v. United States, Ct.Cl., 46 F.2d 592, 599, the court noted that the period of affiliation with the parent corporation is the decisive factor in determining whether a subsidiary must make a separate return for part of the year.

As separate affiliations existed, and as a separate consolidated return was properly required by the Commissioner on behalf of Maine, the parent of the affiliation which was terminated on March 15, 1920, he was authorized to apportion invested capital accordingly.[15]

When consolidated returns are made on behalf of affiliated corporations, the individual corporations are the taxpayers;[16] and the returns are theirs just as much as if they had filed them individually. The significance of the consolidated return in each case is one of tax computation and equitable apportionment, not of tax liability.[17] Consequently, when a consolidated return is made for a fractional part of a year, it constitutes, for each corporation in the affiliation, a return for a fractional part of the year, and brings each affiliated corporation within the terms of Section 326(d) of the 1918 Act, so far as concerns tax computation for that period. This does not constitute the creation of, or the attempt to create, separate taxable years [18] but is merely a division of the year into periods for the purpose of accurate computation and equitable apportionment of taxes during a single taxable year. It is a familiar situation which has arisen many times where affiliations of previously separate corporations have taken place during the taxable year. The procedure of tax computation generally used in those cases is equally applicable and equally proper in a situation such as the present, where the change is from an existing to a new affiliation, rather than from independent corporations to an affiliation.

The Commissioner determined the invested capital of Maine and its subsidiaries to be $3,192,636.27, as of January 1, 1920, and apportioned $665,132.55 to the period in dispute. Petitioner does not question the accuracy of either figure in itself, but merely challenges the propriety of the apportionment made by the Commissioner on the theory that separate consolidated returns could not be required because two affiliations did not exist. As we have determined this contention adversely to petitioner, it follows that the Commissioner's apportionment must be approved.

The Board of Tax Appeals found that when petitioner filed its return for the calendar year 1920 it included therein the income of Maine, Mutual Refining, Northwestern and Arizona, and paid a tax thereon in the sum of $200,707.45; that no credit for such payment was made by the Commissioner in favor of Maine or its subsidiaries in arriving at the alleged deficiencies in taxes for the period January 1 to March 15, 1920; that a certificate of overassessment in the sum of $12,779.97 was issued to petitioner, however, for the year 1920, which gave credit for the sum of $200,707.45. Petitioner was not satisfied with that adjustment, and contends that instead of issuing a certificate of overassessment on account of petition-

---

[14] It should be borne in mind, however, that Section 204(b) was involved rather than Section 240, as in the present case.

[15] Revenue Act of 1918, c. 18, § 326(d), 40 Stat. 1057, 1093: "The invested capital for any period shall be the average invested capital for such period, but in the case of a corporation making a return for a fractional part of a year, it shall (except for the purpose of paragraph (2) of subdivision (a) of section 311) be the same fractional part of such average invested capital."

[16] Helvering v. Morgan's, Inc., 293 U. S. 121, 127, 55 S.Ct. 60, 62, 79 L.Ed. 232; Woolford Realty Co. v. Rose, 286 U.S. 319, 328, 52 S.Ct. 568, 570, 76 L.

Ed. 1128; Commissioner v. Van Camp Packing Co., 7 Cir., 67 F.2d 596, 597; Texas Pipe Line Co. v. United States, Ct.Cl., 58 F.2d 852, 859, certiorari denied 288 U.S, 604, 53 S.Ct. 396, 77 L.Ed. 979; Beneficial Loan Society v. Helvering, 63 App.D.C. 122, 123, 70 F.2d 288, 289.

[17] Helvering v. Morgan's, Inc., and Woolford Realty Co. v. Rose, both supra, note 16; Swift & Co. v. United States, Ct.Cl., 38 F.2d 365, 374; Commissioner v. Ben Ginsburg Co., Inc., 2 Cir., 54 F. 2d 238, 239; Sweets Co. of America v. Commissioner, 2 Cir., 40 F.2d 436.

[18] Arnold Constable Corporation v. Commissioner, 2 Cir., 69 F.2d 788.

er's income, the Commissioner must apply some portion of the $200,707.45 to tax liabilities of Mutual Refining, Northwestern and Arizona, thereby reducing the assessed deficiencies and petitioner's transferee liability therefor.

The theory of petitioner's contention is that the payment was made in part to satisfy its own tax liability for the year 1920 but also in part to satisfy the tax liability of the other companies, including their liability for the two and one-half months' period. It urges that only two possible conclusions can be drawn 'from the facts, i. e., (1) the subsidiaries advanced to the petitioner the necessary funds to pay their proportionate share of the total liability appearing on the consolidated return; or (2) the alleged payments were made in behalf of the subsidiaries and were charged against them. It is obvious, however, that a third possibility exists, i. e., that the payment of the $200,707.45 was made by the petitioner alone; that the other companies made no advances thereon; and that no charges were made against them.

 Petitioner relies upon the fact that the other corporations in filing information returns on Form 1122, failed to indicate that apportionment of the tax was to be made among the affiliates, and states in its brief that this fact clearly indicated *that the petitioner was to pay the entire tax.* Apparently the Commissioner came to the same conclusion, and to the further logical conclusion therefrom, that the others did not contribute thereto and were not charged therewith.

The Board found that the record failed to show that the other corporations contributed anything to the payment of the tax paid on the consolidated return and that the fair inference was that the petitioner paid the entire tax out of its own funds. We find no reason to reject this finding.[19] The Commissioner's determination was prima facie correct;[20] the burden was on petitioner to overcome it;[21] it failed to do so, and is not now in a position to urge as an inescapable dilemma two possibilities, when a third, supporting the Commissioner's determination, is even more probable. As petitioner owned and controlled the other corporations one hundred per cent, it was a mere matter of intercorporate bookkeeping so far as it was concerned, and should have been an easy matter for it to prove which of the three possibilities actually occurred.

 The Commissioner knows from experience that the third situation suggested does exist in some cases,[22] and is not required to guess as to the intricacies of intercorporate financing. Having properly determined that petitioner was not affiliated with the corporations against which deficiencies were found for the two and one-half months' period; that petitioner was not authorized to make a return or pay taxes in their behalf; and that it had itself overpaid its taxes for the year; he followed the obvious and proper procedure, i. e., issuing to petitioner a certificate of overassessment, and finding deficiencies against the others.[23]

 Petitioner contends that in any event it is entitled to have the amount paid set off against its transferee liability. However, petitioner confuses its identity as transferee with its claimed taxpayer identity. Even when a consolidated return is properly made the individual affili-

[19] Phillips v. Commissioner, 283 U.S. 589, 599, 600, 51 S.Ct. 608, 612, 75 L.Ed. 1289; Connery Coal & Investment Co. v. Commissioner, 7 Cir., 84 F.2d 485, 488.

[20] Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 44, 72 L.Ed. 184; Bishoff v. Commissioner, 3 Cir., 27 F.2d 91, 93; McGinley Corporation v. Commissioner, 5 Cir., 82 F.2d 56, 57; Westmoreland Specialty Co. v. Burnet, 61 App.D.C. 95, 57 F.2d 615, certiorari denied 287 U.S. 609, 53 S.Ct. 13, 77 L.Ed. 529; Neiman-Marcus Co. v. Lucas, 59 App.D.C. 328, 41 F.2d 300.

[21] Niles Bement Pond Co. v. United States, 281 U.S. 357, 361, 50 S.Ct. 251, 252, 74 L.Ed. 901; Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623; Lightsey v. Commissioner, 4 Cir., 63 F.2d 254, 255; Morsman v. Commissioner, 8 Cir., 90 F.2d 18, 23, 113 A.L.R. 441, certiorari denied Morsman v. Helvering, 302 U.S. 701, 58 S.Ct. 20, 82 L.Ed. 542; Seymour Mfg. Co. v. Burnet, 61 App.D.C. 22, 56 F.2d 494.

[22] Dorrance v. Phillips, 3 Cir., 85 F.2d 660; Hart Glass Mfg. Co. v. United States, Ct.Cl., 48 F.2d 435, 441, 442, certiorari denied 286 U.S. 556, 52 S.Ct. 639, 76 L.Ed. 1290.

[23] Hart Glass Mfg. Co. v. United States, Ct.Cl., 48 F.2d 435, certiorari denied 286 U.S. 556, 52 S.Ct. 639, 76 L.Ed. 1290; Ford Motor Co. v. United States, Ct.Cl., 9 F.Supp. 590, 601, certiorari denied 296 U.S. 636, 56 S.Ct. 170, 80 L.Ed. 452.

ates continue to be the taxpayers.[24] Here the tax liability accrued against each of the three other corporations *before* affiliation with petitioner took place.[25] Later events did not change their character as taxpayers. Their tax liability must be determined as of the two and one-half months' period in dispute. Whatever that liability was as of March 15, 1920, petitioner succeeded to it. Whatever may have happened in the relationship existing between petitioner and its affiliates thereafter makes no difference. Section 284 of the Revenue Act of 1926, 44 Stat. 66, authorizes an overpayment to be credited against any income, war-profits, or excess-profits tax, or installment thereof then due from the taxpayer. The Commissioner is without legal authority under this provision without more to apply an overpayment to the payment of taxes due from any taxpayer other than the one making the overpayment. Hart Glass Mfg. Co. v. United States, Ct. Cl., 48 F.2d 435, 442, certiorari denied 286 U.S. 556, 52 S.Ct. 639, 76 L.Ed. 1290; Philadelphia Rapid Transit Co. v. United States, Ct.Cl., 10 F.Supp. 591, certiorari denied U. S. v. Wilson, 300 U.S. 664, 57 S. Ct. 507, 81 L.Ed. 872.

The provisions governing collection of taxes from transferees were first introduced into the revenue laws by the Act of 1926,[26] the purpose being to provide a summary and expeditious method of collecting income taxes in situations in which a taxpayer disposed of his assets, leaving himself unable to meet his tax liability. Prior thereto the only avenue of redress open to the Government in such a case was to proceed against the transferee in equity upon a trust fund theory or at law if the debts of the transferor had been assumed.[27] However, in practice, this was difficult and expensive, and was seldom attempted. Consequently, Congress established the alternative summary method of collection—by notice to the transferee and opportunity either to pay and sue for a refund, or else to proceed before the Board of Tax Appeals, with opportunity for review before the courts.[28] No new obligation was created by the statute against the transferee, but merely a new remedy for enforcing the existing liability.[29] Although, under some circumstances, for some procedural purposes the transferee is treated as a taxpayer would be treated;[30] and although credit may be

[24] Helvering v. Morgan's, Inc., 293 U.S. 121, 127, 55 S.Ct. 60, 62, 79 L.Ed. 232; Woolford Realty Co. v. Rose, 286 U.S. 319, 328, 52 S.Ct. 568, 570, 76 L.Ed. 1128; Hart Glass Mfg. Co. v. United States, Ct.Cl., 48 F.2d 435, 441, 442, certiorari denied 286 U.S. 556, 52 S.Ct. 639, 76 L.Ed. 1290; Beneficial Loan Society v. Helvering, 63 App.D.C. 122, 123, 70 F.2d 288, 289; Commissioner v. Ben Ginsburg Co., Inc., 2 Cir., 54 F.2d 238, 239; Texas Pipe Line Co. v. United States, Ct.Cl., 58 F.2d 852, 859, certiorari denied 288 U.S. 604, 53 S.Ct. 396, 77 L.Ed. 979.

[25] W. A. Sheaffer Pen Co. v. Commissioner, 27 B.T.A. 1056; Furniture Exhibition Bldg. Co. v. Commissioner, 24 B.T.A. 1279; and Popular Price Tailoring Co. v. Commissioner, 7 Cir., 33 F.2d 464, relied upon by petitioner, can be distinguished on this ground.

[26] 44 Stat. 9, 61, which provides as follows:

"Sec. 280. (a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act."

[27] Phillips v. Commissioner, 283 U.S. 589, 592, 51 S.Ct. 608, 609, 75 L.Ed. 1289. See, also, Capps Mfg. Co. v. United States, 5 Cir., 15 F.2d 528; United States v. Garbutt, 10 Cir., 35 F.2d 924.

[28] See Leighton v. United States, 289 U.S. 506, 53 S.Ct. 719, 77 L.Ed. 1350; Liquidators v. United States, 5 Cir., 65 F.2d 316.

[29] Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Liquidators v. United States, supra, note 28.

[30] Phillips v. Commissioner, 283 U.S. 589, 594, note 4, 51 S.Ct. 608, 610, 75 L. Ed. 1289. See United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Burnet v. San Joaquin Fruit & Investment Co., 9 Cir., 52 F.2d 123, 127, 128. See, also, Nauts v. Clymer, 6 Cir., 36 F. 2d 207; Houston Street Corporation v. Commissioner, 5 Cir., 84 F.2d 821.

given to a transferee for an overpayment made by it as an individual taxpayer, where the Commissioner and the transferee agree upon such a procedure,[31] the word taxpayer as used in Section 284 of the Act, 44 Stat. 66, is properly limited in its application to one primarily liable as a taxpayer.[32] Consequently, the Commissioner was entirely justified in refusing to credit the petitioner with the overpayment.

For the year 1920, respondent determined the income of Arizona to be $187,905.41; he determined that two and one-half twelfths thereof amounted to $37,991.80; he apportioned the latter sum to the period January 1 to March 15, 1920, and assessed a deficiency for that sum against petitioner as transferee. Petitioner contends, however, that for the period in question Arizona sustained a net loss of $39,010.31, although its method of computation results in showing a net income of $226,915.72 for the last nine and one-half months of 1920. Its method consists in applying Arizona's percentage of gross profits to gross sales for the entire year to sales made during the two and one-half months' period. In support of its contention that this is the proper method of computation petitioner emphasizes the fact, found by the Board, that during the succeeding two years, when inventories were kept, the percentage of profit was the same. However, inventories constituted only one of a number of factors which should be considered in determining whether there was gain or loss. Assuming a constant gross profit ratio, the method proposed by petitioner results also, at best, in an approximation. As was said by the Board in its opinion: "* * * It would seem that this distinctly unfavorable situation in the 2½-month period, as compared with the 9½-month period, requires some explanation before the result shown in Exhibit E [petitioner's computation, showing net loss] could be accepted, but there is none in the record. Such a situation could result from any one, or a combination, of a number of factors, not the least of which would be any differential in gross profit

---

31 See Ford Motor Co. v. United States, Ct.Cl., 9 F.Supp. 590, 603, certiorari denied 296 U.S. 636, 56 S.Ct. 170, 80 L.Ed. 452; Daube v. United States, Ct.Cl., 59 F.2d 842, affirmed 289 U.S. 367, 53 S.Ct. 597, 77 L.Ed. 1261.

32 In Michael v. Commissioner, 2 Cir., 75 F.2d 966, certiorari denied 296 U.S. 579, 56 S.Ct. 89, 80 L.Ed. 409, the Circuit Court of Appeals, in adopting the opinion of the Board of Tax Appeals, held (page 969): "Nor do we believe that one who becomes liable to pay the tax of another because of a liability at law or in equity is the 'taxpayer' as that word is used in the portions of the statute quoted above. The section deals with the liability of a transferee of property of a taxpayer to pay the tax imposed upon the taxpayer. There is a distinction drawn in this section between a taxpayer and one liable at law or in equity to pay his tax. The act, in section 2(a)(9), 26 U.S.C.A. § 1262(a) (9) [now 26 U.S.C.A. § 1696(14)], defines a 'taxpayer' as one 'subject to a tax imposed by this Act.' The act imposes no tax upon the transferee of assets of a taxpayer. It creates no new liability. It merely provides a new method by which the liability which arises at law or in equity may be determined and enforced."

Likewise, in California Iron Yards Corporation v. Commissioner, 9 Cir., 82 F.2d 776, certiorari denied 299 U.S. 553, 57 S.Ct. 15, 81 L.Ed. 407, where it was contended that a transferee corporation was a taxpayer within the meaning of the act so that a second proceeding for the fixing of a tax against the corporation as taxpayer would be invalid, the court, in holding the contrary, said (page 779): "This contention, however, overlooks the fact that the word 'taxpayer' throughout the Revenue Act refers to the one liable in the first instance for the payment of the tax as distinguished from one who becomes liable by reason of being a transferee. This distinction is pointed out in the Circuit Court of Appeals for the Second Circuit in Michael v. Commissioner, 75 F.2d 966. The proceeding in the present case is not against the taxpayer as such, but one to enforce the obligation of a third party by a proceeding in the nature of a supplementary proceeding, or of an independent action at law or in equity to subject the property transferred, or rather its owner, to the liability under which it rested while in the hands of the transferor."

The distinction between the respective liabilities of taxpayer and transferee is also recognized by the Court in Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289, where, in discussing the procedure to be followed before the Board of Tax Appeals, it said (page 598, 51 S.Ct. page 612): "The transferee has the right to a preliminary examination of books, papers, and other evidence of the taxpayer; and the burden of proof is on the Commissioner to show that the appellant is liable as a transferee of prop-

ratio as between the two periods." 34 B.T.A. 29, at page 35.

When net income is clearly reflected by other methods, the method used by the Commissioner of apportioning the year's entire net income on a monthly basis may be improper.[33] However, when other methods, applied to the evidence presented, do not clearly reflect net income, the Commissioner's method of approximating the desired result is proper.[34] Whether in a particular case net income can be computed by one method or another is a question of fact to be determined by the fact-finding body from all the evidence before it. This court cannot substitute its judgment for the findings of the Board, or remand the case unless the action of the latter was arbitrary and unsupported by substantial evidence.[35] The Commissioner's determination was prima facie correct and the burden was upon the taxpayer to prove that it was incorrect.[36] In the present case, the Board found that the Commissioner's apportionment, in the light of the evidence, was not arbitrary or contrary to fact. It held that when resort must be had to some method of apportionment to determine net income for a part of the year, it is more conducive to a clear reflection of income to apply the apportionment upon the basis of all factors which go to make up net income, instead of using merely the ratio of gross profits to gross sales. We agree with the Board.

Petitioner next seeks to escape payment of the tax liability of Mutual Refining and Northwestern by contending that Arizona and not it was the transferee of the assets of these corporations. While the form of the transactions may lend color to petitioner's argument, the substance, which is the controlling factor,[37] does not. The entire capital stock of Mutual Refining, Northwestern and Arizona was owned solely by petitioner. As the sole stockholder it had full control of the policies and management of these companies, including power to dictate the method of liquidating them.

Aside from the fact that Mutual Refining, Northwestern and Arizona were controlled by the same interests, there was no relationship between the three, and neither maintained any control over the others. Hence, when Mutual Refining and Northwestern transferred all their properties to Arizona—to them a total stranger—without consideration, the transactions, viewed as a matter of substance, were merely a method carried out by petitioner for distributing the assets of those companies to it as the sole stockholder of all the other corporations involved. The fact that petitioner, as distributee, elected to have the conveyances made in a roundabout fashion to its nominee, rather than to itself directly, is immaterial in establishing transferee liability. See Frost v. Commissioner, 23 B.T.A. 411.

If a normal procedure had been followed and Arizona had conveyed, as consideration for the transfers, shares of its stock to Mutual Refining and Northwestern, which in turn had distributed them to petitioner as their stockholder, there is no doubt that petitioner would be subject to a transferee's liability. Fairless v. Commissioner, 6 Cir., 67 F.2d 475. However, in the present case such a procedure would have been a superfluity, for petitioner was already the owner of all

---

erty, though not to show that the taxpayer was liable for the tax." See, also, Heffernan v. Alexander, D.C.W.D.Okl., 48 F.2d 855, and Morganite Brush Co., Inc., v. Commissioner, 24 B.T.A. 776, 782.

[33] See Anticich v. Commissioner, 18 B.T.A. 513.

[34] Rouss v. Bowers, 2 Cir., 30 F.2d 628, certiorari denied 279 U.S. 853, 49 S.Ct. 348, 73 L.Ed. 995; People's-Pittsburgh Trust Co. v. United States, Ct.Cl., 10 F. Supp. 139.

[35] Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 325, 81 L.Ed. 491; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 490, 491, 57 S.Ct. 569, 573, 81 L.Ed. 755.

[36] Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 44, 72 L.Ed. 184; Reinecke v. Spalding, 280 U.S. 227, 232, 233, 50 S.Ct. 96, 97, 98, 74 L.Ed. 385; Burnet v. Houston, 283 U.S. 223, 227, 228, 51 S.Ct. 413, 414, 415, 75 L.Ed. 991; Niles Bement Pond Co. v. United States, 281 U.S. 357, 361, 50 S.Ct. 251, 252, 74 L.Ed. 901. See, also, United States v. Anderson, 269 U.S. 422, 443, 46 S.Ct. 131, 135, 70 L.Ed. 347.

[37] United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 65, 66 L.Ed. 180; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Morsman v. Commissioner, 8 Cir., 90 F. 2d 18, 22, 113 A.L.R. 441, certiorari denied Morsman v. Helvering, 302 U.S. 701, 58 S.Ct. 20, 82 L.Ed. 542.

112

Arizona's shares and the effect would have been to transfer to petitioner, by a redundant transaction, that which it already owned. Nor is it necessary that the physical assets themselves be traced to petitioner. Fairless v. Commissioner, supra, at page 476. It is admitted that the value of the assets transferred was sufficient to meet the tax liability now asserted. The action of the Board, in sustaining the respondent's determination that petitioner is liable under Section 280 of the Revenue Act of 1926, 44 Stat. 61, as a transferee of Mutual Refining and Northwestern, was therefore proper and must be affirmed.

Finally, petitioner contends that the statute of limitations barred any liability which may have existed. This contention falls with the one previously considered that its liability, if any, was that of a taxpayer rather than a transferee. Section 280 (b) (1) of the Revenue Act of 1926, 44 Stat. 61, provides that the liability of a transferee may be assessed within one year after the expiration of the period of limitation for assessment against the taxpayer. The expiration of the statutory period in the case of Maine and its subsidiaries occurred on March 15, 1926, and the notice of transferee liability was mailed to petitioner on March 15, 1927. Consequently, it was timely mailed, and the assessment was effective to hold petitioner upon its transferee liability.

Affirmed.