CHRISTOPHER B. MOSCATIELLO *vs.* BOARD OF ASSESSORS OF BOSTON.

No. 92-P-199.

Suffolk. May 20, 1993. - June 7, 1994.

Present: ARMSTRONG, DREBEN, & SMITH, JJ.

*Taxation,* Real estate tax: exemption. *Real Property,* Ownership. *Nominee. Trust,* Taxation. *Words,* "Taxpayer."

The term "taxpayer" as used in G. L. c. 59, § 5C, which allows a residential exemption to reduce the assessed valuation of residential real estate, refers to the person to whom taxes are assessed, that is, the person who is the holder of the record title for purposes of assessment under G. L. c. 59, § 11. [622-625]

Where the beneficiary of a trust occupied trust property as his principal residence but where the trustee of the trust held legal title to the property, the beneficiary was not the "taxpayer" within the meaning of G. L. c. 59, § 5C, for purposes of eligibility for a residential exemption under that statute to reduce the assessed valuation of the property. [625-626]

APPEAL from a decision of the Appellate Tax Board.

*Constantine Papademetriou,* Special Assistant Corporation Counsel (*James D. Rose,* Special Assistant Corporation Counsel, with him) for the Board of Assessors of Boston.

*Floyd H. Anderson* for the taxpayer.

ARMSTRONG, J. Moscatiello filed a timely application under G. L. c. 59, § 5C, for a residential exemption to reduce the 1989 fiscal year property taxes on a house in Charlestown. The house is his principal residence, but the title is held by the trustee of the Seventeen Monument Square Realty Trust, a nominee trust listing Moscatiello as sole beneficiary. See *Morrison* v. *Lennett,* 415 Mass. 857, 860 (1993). The residential exemption under § 5C for 1989 would reduce the assessed valuation of the house by $36,033 (from $496,700), which would in turn reduce the property

tax by \$287.18 (from \$3,958.70). The board of assessors denied the application, and, on appeal under G. L. c. 59, §§ 64 & 65, the Appellate Tax Board reversed without explicating its reasons. The Boston assessors appealed.

The residential exemption provided by § 5C, available in municipalities which qualify and authorize it, applies only to "the principal residence of a taxpayer as used by the taxpayer for income tax purposes." G. L. c. 59, § 5C, as appearing in St. 1982, c. 369, § 5. There is no question that the house was Moscatiello's principal residence for income tax purposes. The assessors denied the exemption because they treated "the taxpayer" as the trustee, who held the legal title and to whom the house was assessed. It is conceded that the house was not the principal residence of the trustee.

An analogous question was dealt with in *Kirby* v. *Assessors of Medford*, 350 Mass. 386 (1966), invoking the elderly exemption authorized by G. L. c. 59, § 5, Forty-first (exempting from local real estate taxes \$4,000 of the real property "*of a person* seventy years of age or over and occupied by him as his domicile . . . provided [A] that such person . . . [2] *has owned such real property* either *individually,* jointly, or as a tenant in common, *for the preceding five years*" [emphasis original]. *Id.* at 387 n.2). Focussing on the ownership requirement, and applying the principle of strict construction of exemptions, the court held that the words "property of" and "owned" referred to legal title, not beneficial ownership, and declined to apply the exemption to one who "has voluntarily chosen to hold his property in a form which separates the legal title and the beneficial ownership." *Id.* at 390-391. The reasoning of *Kirby* v. *Assessors of Medford, supra,* compels a similar result here.

Moscatiello would have us distinguish *Kirby* v. *Assessors of Medford, supra,* because it dealt with the elderly exemption, which makes ownership a condition of eligibility, whereas the residential exemption conditions eligibility on "taxpayer" status. Obviously one can pay the tax without being the owner. The pivotal question is the definition of a

"taxpayer" whose principal residence qualifies for the exemption under § 5C.

The term taxpayer is not defined by our statute and has been assigned different meanings depending upon the context in which it is used. It can refer either to the person liable to pay a tax or to the person who actually pays it. Webster's Third New Intl. Dictionary 2345 (1971 ed.) ("one that pays or is liable to pay a tax"). In some situations it carries both meanings. See *Reiling* v. *Comptroller*, 201 Md. 384, 386 (1953) (taxpayer defined by statute as "any person paying or liable to pay [the] tax"). In other situations courts have adopted a more restrictive definition, focusing on liability to pay the tax rather than on actual payment. See, e.g., *Morse* v. *United States*, 494 F.2d 876, 880 (9th Cir. 1974) (taxpayer under Internal Revenue Code was person in whose name returns were filed, not third party who actually paid taxes); *Philadelphia Rapid Transit Co.* v. *United States*, 10 F. Supp. 591, 600 (Ct. Cl. 1935), cert. denied sub nom. *United States* v. *Wilson*, 300 U.S. 664 (1937) (taxpayer was person assessed, not lessee who contracted to pay taxes). See also Black's Law Dictionary 1462 (6th ed. 1990) (taxpayer is one "subject to a tax on income, regardless of whether he or she pays the tax"). Here, the context compels the narrower meaning.

Section 5C contemplates that the residential exemption is normally granted at the time the property is assessed, well before it can be known who will actually pay the tax. Real property is assessed to the record owner as of January 1 of the year preceding the fiscal year to which the tax relates. See G. L. c. 59, § 11. A taxpayer who is eligible for the residential exemption and did not then receive it may apply for it "within three months after the date on which the bill or notice of assessment was sent," § 5C, second par., at which time it may or may not be known who the actual payer will be.[1] Contrast *Assessors of Boston* v. *Jakes*, 341 Mass. 136

---

[1] Under G. L. c. 59, § 57, real estate taxes are nominally due and payable on the first day of the fiscal year, July 1; but, because interest does not begin to accrue until after November 1 (on half of the assessed tax) and

(1960) (concerning exemption applicable to "real estate of" a class of persons including disabled veterans) where the fact that Jakes was a disabled veteran could be known on the assessment date.

The cases concerning standing to prosecute an abatement application are instructive. The record owner has standing to apply whether or not the tax has been paid. *Boston Five Cents Sav. Bank* v. *Assessors of Boston*, 313 Mass. 762, 766-767 (1943). *Keegan* v. *Assessors of Boston*, 334 Mass. 169, 171 (1956). Under the provisions of G. L. c. 59, § 59, one having an interest in real estate may prosecute such an application if he has paid the tax. The cases under this provision establish that one who has not paid the tax has no standing, and an application filed by a nonassessed owner without his having first paid the tax is a nullity, even if he pays the tax thereafter. *Boston Five Cents Sav. Bank* v. *Assessors of Boston*, 311 Mass. 415, 417-418 (1942). *Donlan* v. *Assessors of Holliston*, 389 Mass. 848, 854 (1983). By comparable reasoning, because eligibility for the exemption is based on the facts extant on January first preceding the fiscal year in which the tax will be billed and paid, the status of the applicant as taxpayer must be ascertainable as of that date.[2] Thus, we conclude that "taxpayer" as used in § 5C refers to the person to whom the taxes are assessed, that is, because of G. L. c. 59, § 11, the person who is the holder of the record title. Following *Kirby* v. *Assessors of Medford, supra*, we conclude that if the holder of the record (i.e., legal) title does not qualify for the exemption, it is unavailable to the beneficial owner.

---

after May (on the second half), the later dates are treated, for practical purposes, as the due dates.

[2]The chronology in the instant case illustrates the problems with treating § 5C's "taxpayer" as the resident who pays the tax. The tax bills for fiscal year 1989 were mailed on November 22, 1988; thus, by the terms of G. L. c. 59, § 57, the first half payment was due (i.e., interest was payable thereafter) December 22, 1988. Moscatiello's application for the exemption was filed November 28, 1988, but the first-half tax was not paid until December 2, 1988. The record is silent as to who paid the tax.

Our conclusion is not altered by the nature of the trust instrument in this case. We recognize that, for many purposes, nominee trusts are regarded as creating a principal-agent, rather than a true trustee-beneficiary, relationship. See *Apahouser Lock & Security Corp.* v. *Carvelli*, 26 Mass. App. Ct. 385, 388 (1988). Taxing authorities sometimes disregard nominee trust arrangements altogether. See, e.g., *Druker* v. *State Tax Commn.*, 374 Mass. 198, 200-201 (1978) (allowing deduction of losses from two nominee trusts on personal income tax returns). That does not distinguish this case from *Kirby* v. *Assessors of Medford, supra*, which also recognized that "the power of amendment and revocation makes the beneficial ownership of the trust property, as a practical matter for many purposes, including some tax purposes, essentially equivalent to outright ownership by the settlor [Kirby was settlor and sole beneficiary]." *Id.* at 389.

It would be administratively unsound to require assessors to analyze the provisions of each trust instrument and to determine eligibility for the exemption based on subtle differences in the degree of control exercised by a beneficiary who uses trust property as his principal residence.

*Decision of Appellate Tax Board reversed.*