EMELIE S. BORN[1] *vs.* BOARD OF ASSESSORS OF CAMBRIDGE.

Suffolk. April 10, 1998. - July 14, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Taxation,* Real estate tax: exemption. *Real Property,* Ownership. *Cooperative Housing. Words,* "Taxpayers."

Tenant-shareholders of a housing cooperative corporation were not "taxpayers" within the meaning of G. L. c. 59, § 5C, for purposes of qualifying for a residential real estate tax exemption thereunder, where the corporation was the holder of the legal title to, and the assessed owner of, the property. [793-796]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeffrey J. Upton* for the plaintiff.

*Gail S. Gabriel* for the defendant.

IRELAND, J. The question raised by this case is whether tenant-shareholders of Longview Corporation (Longview), a housing cooperative corporation organized under G. L. c. 157B, qualify for the residential real estate tax exemption under G. L. c. 59, § 5C. The Cambridge board of assessors and the Appellate Tax Board determined that they are not. We transferred the case here on our own motion and affirm.

The facts are undisputed. Longview was the assessed owner of property located at 983-986 Memorial Drive, Cambridge, on the relevant assessment dates for the fiscal years 1991 and 1993. At all material times, Longview was a housing cooperative corporation organized under G. L. c. 157B.

As of the assessment dates at issue, the property was a six-story brick apartment building consisting of 75,024 square feet of unit space represented by one deed. The building contained

---

[1]As president and on behalf of the tenant-shareholders of Longview Corporation, a housing cooperative corporation.

fifty-four cooperative residential apartments. There were fifty-four shareholders who owned a total of 3,864 shares of the corporation. Shares were allocated by individual apartments or units, based on the size, floor location, and whether the apartment had a water view. During the relevant time period most of the shareholders occupied an apartment in the building as their principal residence for income tax purposes.[2]

Pursuant to long-term proprietary leases, shareholders were entitled to occupy a specific apartment and storeroom in the building. The lease was automatically renewed at the end of each year as long as the shareholder complied with the lease provisions. In addition, shareholders had a right to use the common areas and had an obligation to pay for the maintenance and expenses of the corporation.

The board of directors of Longview met regularly to determine the annual corporate operating expenses. Each shareholder paid a pro rata share of the expenses, based on the number of shares owned, in monthly instalments directly to the property manager. The monthly charges included insurance, management costs, gas, oil, electricity, water, sewer, plumbing, maintenance, capital repairs, mortgage payments, and property taxes. Longview's property manager paid all the bills associated with the property directly to the service providers.

General Laws c. 59, § 11, provides that real estate taxes shall be assessed "to the person who is the owner on January first, and the person appearing of record, in the records of the county, or of the district . . . where the estate lies." General Laws c. 59, § 5C, provides for an exemption for residential real property in cities or towns assessing at full and fair cash valuation as follows:

> "With respect to each parcel of real property classified as Class One, residential, in each city or town certified by the commissioner to be assessing all property at its full and fair cash valuation, and at the option of the board of selectmen or mayor, with the approval of the city council, as the case may be, there shall be an exemption equal to not more than twenty per cent of the average assessed value of all Class One, residential, parcels within such city

[2]Between thirty-three and thirty-six of the fifty-four shareholders occupied an apartment in the building as their principal residence for the relevant time period.

or town; provided, however, that such an exemption shall be applied only to the principal residence of a taxpayer as used by the taxpayer for income tax purposes. . . ."

For fiscal years 1991 and 1993, the assessors classified the property owned by Longview as Class One, Residential. The Cambridge city council approved residential exemptions set forth in G. L. c. 59, § 5C, for fiscal years 1991 and 1993. In addition, the Commissioner of Revenue certified to the assessors that the assessments on real property that the assessors proposed to make were at full and fair cash valuation for the period covering fiscal years 1991 and 1993.

Emelie S. Born, as president and on behalf of the tenant-shareholders, filed an application for residential exemption for fiscal years 1991[3] and 1992. Both applications were denied by the assessors. On appeal, the assessors found that both applications had been properly denied based on the conclusion that the tenant-shareholders were not "taxpayers" whose principal residences qualified for the residential exemption under § 5C. The Appellate Tax Board (board) agreed with the assessors' conclusion and affirmed. Born appealed, and we transferred the case to this court. Because we agree that the tenant-shareholders are not "taxpayers" within the meaning of G. L. c. 59, § 5C, we affirm.

The residential exemption provided by G. L. c. 59, § 5C, is available only in those municipalities which qualify and authorize it, and applies only to "the principal residence of a taxpayer as used by the taxpayer for income tax purposes." See *Moscatiello* v. *Assessors of Boston*, 36 Mass. App. Ct. 622 (1994). There is no dispute that (1) Longview holds legal title to the property; (2) Longview is the assessed owner of the property; (3) most of the units in the building are occupied by Longview shareholders as their principal residences; (4) the shareholders pay the real estate taxes on the property indirectly; and (5) a good portion of the shareholders occupy a unit in the building as their principal residences for income tax purposes. Therefore, this case turns on whether the tenant-shareholders are "taxpayers" within the meaning of G. L. c. 59, § 5C. Born raises two other issues that must be addressed. She argues that (1) our decision in *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge*, 424 Mass. 661 (1997), requires us to

---

[3]The 1991 application was filed by the preceding president of Longview, Charles W. Hare, on behalf of the tenant-shareholders.

construe § 5C as including housing cooperatives and (2) given the valuation methods used by the assessors, it is unfair to treat the property as owned by one entity for purposes of the § 5C exemption.

1. *Definition of "taxpayer" under § 5C.* Because the statute does not define the term "taxpayer," we shall examine the relevant case law. In *Moscatiello, supra* at 624, the Appeals Court determined that the beneficial owner of real estate held in trust was not a "taxpayer" within the meaning of § 5C, and was therefore ineligible for the exemption. The court concluded that the term "taxpayer" under the § 5C exemption only included the person to whom the taxes were assessed, i.e., the person who was the holder of record title. Under the facts of that case, the taxes were assessed to the trustee, who held the record legal title, and therefore, the beneficial owner did not qualify for the exemption.[4] *Id.* at 625. In reaching its conclusion the court recognized that the meaning of the term "taxpayer" varies depending on the context:

> "It can refer either to the person liable to pay a tax or to the person who actually pays it. Webster's Third New Intl. Dictionary 2345 (1971 ed.) ('one that pays or is liable to pay a tax'). In some situations it carries both meanings. See *Reiling* v. *Comptroller*, 201 Md. 384, 386 (1953) (taxpayer defined by statute as 'any person paying or liable to pay [the] tax'). In other situations courts have adopted a more restrictive definition, focusing on liability to pay the tax rather than on actual payment. See, e.g.,

---

[4]Born argues that the board's reliance on *Moscatiello* v. *Assessors of Boston*, 36 Mass. App. Ct. 622 (1994), is misplaced, because the *Moscatiello* court relied exclusively on *Kirby* v. *Assessors of Medford*, 350 Mass. 386 (1966), in reaching its conclusions, and that case was different because the exclusion required ownership of the property. We disagree. The *Moscatiello* court did not rely on *Kirby* when it concluded that "taxpayers," for purposes of § 5C, "refers to the person to whom the taxes are assessed, that is, because of G. L. c. 59, § 11, the person who is the holder of the record title." *Id.* at 625. In fact the court explicitly stated that it opted for a narrow construction of the term "taxpayer" based on *Morse* v. *United States*, 494 F.2d 876, 880 (9th Cir. 1974), *Philadelphia Rapid Transit Co.* v. *United States*, 10 F. Supp. 591, 600 (Ct. Cl. 1935), cert. denied sub nom. *United States* v. *Wilson*, 300 U.S. 664 (1937), and Black's Law Dictionary 1462 (6th ed. 1990).

The *Moscatiello* court did say that it followed *Kirby* with respect to the ability of a beneficial owner of property held in trust to qualify for the § 5C exemption. However, this case does not involve a trust, and *Moscatiello* is inapposite here.

*Morse* v. *United States*, 494 F.2d 876, 880 (9th Cir. 1974) (taxpayer under Internal Revenue Code was person in whose name returns were filed, not third party who actually paid taxes); *Philadelphia Rapid Transit Co.* v. *United States*, 10 F. Supp. 591, 600 (Ct. Cl. 1935), cert. denied sub nom. *United States* v. *Wilson*, 300 U.S. 664 (1937) (taxpayer was person assessed, not lessee who contracted to pay taxes). See also Black's Law Dictionary 1462 (6th ed. 1990) (taxpayer is one 'subject to a tax on income, regardless of whether he or she pays the tax')."

*Id.* at 624.

Construing the definition of taxpayer narrowly in the context of a tax exemption is consistent with legal precedent and sound public policy, because tax exemptions release taxpayers from their obligation to pay their share of the cost of government, thereby disturbing the objective of "equalizing the distribution of the tax burden." *Dwyer* v. *Cempellin*, 424 Mass. 26, 30 n.7 (1996), citing *Animal Rescue League* v. *Assessors of Bourne*, 310 Mass. 330, 332 (1941) (while public policy permits reasonable tax exemptions, "taxation is the general rule" and therefore "statutes granting exemptions from taxation are strictly construed"). See *New England Legal Found.* v. *Boston*, 423 Mass. 602, 609 (1996) (exemptions from taxation will be interpreted narrowly); *Kirby* v. *Assessors of Medford*, 350 Mass. 386, 390-391 (1966) (same). As noted in *Massachusetts Medical Soc'y* v. *Assessors of Boston*, 340 Mass. 327, 331 (1960), "[e]xemption from taxation is a matter of special favor or grace. It will be recognized only where the property falls clearly and unmistakably within the express words of a legislative command."

In this case, it is undisputed that Longview is holder of record legal title to, and the assessed owner of, the property. Longview does not qualify for the exemption because it is a corporation. The tenant-shareholders are not "taxpayers" within the meaning of § 5C because they do not hold legal title to, and are not the assessed owners of, the property. Accordingly, neither Longview nor the tenant-shareholders qualify for the real estate tax exemption under G. L. c. 59, § 5C.[5]

2. Born next argues that our decision in *1010 Memorial Drive*

[5]The Commissioner of Revenue issued a letter ruling that the deeds excise tax imposed under G. L. c. 64D, § 1, applied to a transfer of a tenant-shareholder's shares and appurtenant propriety lease to another. See Letter

*Tenants Corp.* renders *Moscatiello* inapplicable to housing cooperatives, and that pursuant to that case we should construe § 5C to treat housing cooperatives in the same way as condominiums. We disagree.

In *1010 Memorial Drive Tenants Corp.*, *supra* at 662, we concluded that a housing cooperative qualified for an exemption applicable to condominiums contained in a statute that would have required it to install automatic sprinklers in each unit of the building. We reasoned that the physical characteristics of housing cooperatives were similar enough to those of condominiums that the condominium exemption should be read to include cooperatives. *Id.* at 664. In reaching this conclusion, it was significant that the fire "risk [associated with including housing cooperatives in the condominium exclusion was] unrelated to the legal ownership structure of the building."[6] *Id.*

Unlike *1010 Memorial Drive Tenants Corp.*, *supra*, the present case involves an exemption for property taxes, and therefore, the form of legal ownership is related to whether one qualifies for the exemption. See generally *Minkin* v. *Commissioner of Revenue*, 425 Mass. 174 (1997) ("shareholders organized themselves as corporate trusts and must abide by the [tax] consequences of that election"); Forms and Tax Consequences of Real Estate Ownership 246-247 (Mass. Continuing Legal Educ. 1986) (discussing tax consequences of different forms of real estate ownership); Birnbaum, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass. L. Q. 364, 369 (1976) (discussion of tax consequences of placing real estate in nominee trust). Cooperatives are voluntary arrangements that place the legal title to property in a corporation, thereby affecting the substantive rights of the parties. See, e.g., 4B R. Powell, Real Property par. 633.1[3], at 773-774 (P. Rohan ed. 1977).

Ruling 90-1, 1 Official MassTax Guide at 1061-1065 (West 1998). Important to that ruling was that the leasehold interest held by the tenant-shareholder was considered "realty" for purposes of G. L. c. 64D, § 1. This letter ruling does not apply here because this case involves an interpretation of the term "taxpayer."

[6]The primary argument as to why cooperatives were not included in the sprinkler statute was that the Legislature distinguished between individually owned units and individually rented units. The trial judge found that "tenants in large residential buildings are subject to the will of landlords to maintain the safety of the property." *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge*, 424 Mass. 661, 664 (1997). This court concluded that because shareholders were their own landlords this concern was irrelevant. *Id.*

Thus, it follows that the tenant-shareholders must abide by the tax consequences of their chosen form of ownership. See *Minkin, supra* at 181.

Additionally, Born's argument that *Moscatiello* is inapplicable to this case is unpersuasive. *Moscatiello, supra* at 624, contains a discussion concerning the definition of "taxpayer" under G. L. c. 59, § 5C, that is particularly useful in this case. The fact that housing cooperatives were not explicitly mentioned does not detract from the value of the court's analysis.

3. Finally, Born argues that it is unfair to treat the property as a single property for purposes of the § 5C exemption, when, for valuation purposes, the city treats the property as fifty-four separate units.[7] We reject this argument because the valuation of property is unrelated to whether the legal owners of a property qualify for a tax exemption. In valuing property, an assessor's task is to assess real estate at its fair cash value, "which is the price an owner willing but not under compulsion to sell ought to receive from one willing but not under compulsion to buy." *Boston Gas Co.* v. *Assessors of Boston*, 334 Mass. 549, 566 (1956). See G. L. c. 59, § 38. The fact that the legal owners of property do not qualify for the residential tax exemption because of their choice of organization does not bear on the appropriateness of certain valuation methods used by the assessors.

4. *Conclusion.* Born does not fit the definition of "taxpayer" within the meaning of G. L. c. 59, § 5C, and, therefore, does not qualify for the residential tax exemption. Accordingly, we affirm the decision of the board.

*So ordered.*

---

[7]According to testimony of the director of assessment for the city of Cambridge, if the property value were based on comparable sales of entire apartment buildings the value of the property would have been lower.